Dr. Ulvi A. DOGAN and Sado & Dogan, Inc., Plaintiffs,

v.

HARBERT CONSTRUCTION CORPORATION, Defendant.

No. 80 Civ. 0005 (KTD).

United States District Court, S. D. New York.

Oct. 20, 1980.

On Motion to Reargue Dec. 15, 1980.

Plunkett & Jaffe, New York City, for plaintiffs; Kevin J. Plunkett, and George E. Pataki, New York City, of counsel.

Marshall, Bratter, Greene, Allison & Tucker, New York City, Stern, Rendleman, Isaacson & Klepfer, Greensboro, N. C., for defendant; Richard L. Bond, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs, Dr. Ulvi A. Dogan [hereinafter "Dogan"] and Sado & Dogan, Inc. [hereinafter "SADO"] seek damages for the alleged breach of two exclusive agency agreements entered into with the defendant, Harbert Construction Corporation [hereinafter referred to as "Harbert"]. The defendant has moved pursuant to Rule 12(b)(2) and (5) of the Federal Rules of Civil Procedure for an order quashing service of process and dismissing the complaint on the grounds that this court lacks personal juris-diction over the defendant and that the process purportedly served on defendant was insufficient. The plaintiffs have in turn cross-moved to amend their original complaint under Rule 15 of the Federal Rules of Civil Procedure to include claims for breach of a third agency contract between the parties.

### I

The defendant Harbert, an Alabama corporation with its principal place of business in Birmingham, Alabama, engages in heavy construction work in the Middle East and elsewhere around the world. Harbert does not have any offices in New York. One of Harbert's present activities includes participation in a joint venture to build an airbase in Israel's Negev Desert. This joint venture, called the Negev Airbase Constructors [hereinafter "NAC"] is composed of four companies which brought different areas of expertise to the project. Harbert has a 28% interest in this consortium which is presently based in Tel Aviv and has an office in New York City. Prior to the commencement of this action, Harbert had loaned certain of its employees with purchasing experience to NAC and they were employed by NAC in performing purchasing functions. [Harbert Affidavit ¶ 8]. Bill Harbert [hereinafter "Mr. Harbert"], the president of Harbert Construction Corporation, has met with NAC officials in New York City on more than one occasion for the purpose of keeping informed as to the progress of the joint venture. [Id. ¶ 5].

During 1976, Harbert became interested in obtaining construction contracts in Saudi Arabia. To that end, Harbert entered into an agreement in February, 1976, with the plaintiff SADO whereby SADO would assist Harbert in obtaining private and government projects in Saudi Arabia for a fee. SADO is a Delaware corporation with its principal place of business in Larchmont, New York. It is wholly owned by Dr. Ulvi Dogan, who is also the president and chief executive officer. The contract was executed by Mr. Harbert and Dr. Dogan in Riyadh, Saudi Arabia. [Defendant's Memo-

randum in Support of Motion to Dismiss at p. 4; Plaintiff's Complaint ¶ 101. A provision in this contract stated the agreement would be governed by the laws of New York [Ex. A, Complaint, p. 2].

In April, 1976, Dogan, as agent for Harbert, contracted for the services of a consulting firm located in Saudi Arabia. The consulting firm was to perform services solely in Saudi Arabia. The agreement was executed by Mr. Harbert, Dogan and the consulting firm. Whereas this contract recites that it was signed in Saudi Arabia [Exhibit B, Complaint, at p. 3], the defendant contends that it was signed by the defendant at their offices in Alabama. [Harbert Affidavit ¶ 17]. Certain minor amendments to the agreement were later signed by Dr. Dogan in New York, as agent for Harbert. [Dogan Affidavit ¶ 8; Harbert Affidavit ¶ 12].

Plaintiffs' original complaint contains seven claims all arising out of the alleged breach of these two contracts. Service of a summons and complaint were made upon the defendant at the NAC offices in New York. Plaintiffs have since moved this court for leave to amend their complaint to add claims arising from the alleged breach of a third agency agreement. This third agreement between Harbert and SADO extended SADO's consulting services for Harbert into Bahrain.

## II

■ Before discussing the defendant's motion to dismiss, I will address plaintiffs' motion under Rule 15 to amend their complaint. Rule 15(a) states in part that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . ." In this case, the defendant has not yet answered the complaint but has instead made a motion to dismiss for lack of personal jurisdiction. This motion does not constitute a responsive pleading for purposes of Rule 15(a). *Kamerman v. Pakco Companies, Inc.*, 75 F.R.D. 673 (S.D.N.Y.1977). As a result, plaintiffs, absent any bad faith, may amend their complaint as of right even

though it may be an attempt to cure a jurisdictional defect. *See Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977); *Holt v. Katy Industries, Inc.*, 71 F.R.D. 424 (S.D.N.Y.1976). For purposes of defendant's motion to dismiss, therefore, the complaint is deemed amended.

## III

■ The amenability of a foreign corporation to suit in a federal diversity action must be determined in accordance with the law of the state where the court sits. *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963). As a result, New York law will apply to determine whether the defendant is subject to *in personam* jurisdiction in this court. The plaintiffs argue that there are three avenues to obtaining personal jurisdiction over this defendant in New York. The first is that the defendant is present in New York because it is "doing business" here within the meaning of Section 301 of the New York Civil Practice Law and Rules ["C.P.L.R."]. The second is that the defendant's actions provide a basis for long-arm jurisdiction under C.P.L.R. § 302. The third avenue is that the parties specifically consented to personal jurisdiction in New York when they entered into the agreements. Each of these arguments will be addressed in order.

■ It is important to note first, however, that the plaintiffs have the burden of establishing by a preponderance of the evidence that the defendant is subject to personal jurisdiction under New York law. *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F.Supp. 858 (S.D.N.Y. 1978). Although the parties are in basic agreement as to the facts as already set forth, several conflicts exist in the record. These conflicts have been resolved, where possible, in favor of the plaintiff. Nevertheless, for the reasons set forth below, I do not find that the plaintiffs have borne their burden.

## IV

### 1. *"Doing Business" Under C.P.L.R. § 301*

██ Under § 301 of the C.P.L.R., a foreign corporation is subject to the jurisdiction of New York courts when the corporation is found to be present within the state. New York courts have established a "doing business" test which requires that the defendant systematically and regularly carry on business activities within the state in order to be subject to personal jurisdiction for acts unrelated to those business activities. *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 266, 115 N.E. 915, 917 (1917); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1242 (S.D.N.Y.1977). In examining the record, I do not believe defendant's activities meet the standard of "doing business" under New York law.

In their argument, plaintiffs rely heavily on the defendant's participation in NAC which maintains an office in New York City. Mr. Harbert admitted that certain of his company's employees worked for NAC offices in New York. [Harbert Affidavit ¶ 8]. In addition to NAC's presence, the plaintiffs seek to establish Harbert's contacts with New York by reciting Mr. Harbert's secretary's statement to plaintiffs' attorney that Mr. Harbert could be reached through NAC offices. [Pataki Affidavit ¶ 10; Plunkett Affidavit ¶¶ 4, 5].

██ In New York, a joint venture is treated as a partnership formed for a specific undertaking or purpose. *Sadwith v. Lantry*, 219 F.Supp. 171, 177 (S.D.N.Y. 1963). It is clear under partnership law that NAC is an agent of Harbert Corporation for joint venture purposes. *See Ingalls Iron Works Co. v. Fehlhaber Corp.*, 327 F.Supp. 272, 284 (S.D.N.Y.1971). Such a relationship has jurisdictional significance. A foreign corporation may be present in New York by virtue of the activities of its agent. *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 538, 281 N.Y.S.2d 41, 45, 227 N.E.2d 851, 854, *cert. denied sub. nom., U. K. Hilton Hotels, Ltd. v. Frummer*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). It is important to note that if Harbert Corporation is found to be present in New York through the activities of NAC it may be sued on any cause of action, whether related to the NAC activities or not. *See e. g., Gelfand v. Tanner Motor Tours Ltd.*, 385 F.2d 116 (2d Cir. 1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Delagi v. Volkswagenwerk A. G. of Wolfsburg*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972).

██ In view of the limited nature of Harbert Corporation's relationship with NAC and the nature of NAC's presence in New York, I do not believe that Harbert Corporation is doing business in New York within the meaning of § 301. An important New York case addressing this issue is *Frummer, supra*, which held that the Hilton Hotel in London, a British corporation, was "doing business" in New York because of services performed—specifically publicity work and the making of final room reservations—by the Hilton Reservation Service as agent for Hilton (U.K.). In another case, *Gelfand, supra*, decided by the Second Circuit Court of Appeals, a defendant bus owner, operating tours in the Grand Canyon, was found to be doing business in New York. The only contact the defendant corporation had with New York was membership in a non-profit association which publicized for several travel companies. This association hired a New York travel agent to confirm reservations. When the plaintiffs purchased their tour tickets through the New York agent and were later injured on the bus in Nevada, they could obtain personal jurisdiction over the defendant in New York.

The situation at bar is significantly different from these cases which found a foreign corporation present in New York through their agent. In the above cases, the agent's services were "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand*, 385 F.2d at 121. NAC, according to both parties, however, operat-

ed with a finite purpose—the construction of an Israeli airfield. I do not find that the NAC office in New York provides "important services" to the defendant Harbert. There is no allegation that NAC negotiated or entered into any contracts for the defendant. Instead, plaintiff alleges that Harbert employees use NAC offices to conduct Harbert business [Dogan Affidavit ¶ 10]. Harbert denies this and asserts that NAC offices were utilized for NAC purposes only [Harbert Affidavit ¶¶ 5, 6, 7, 8]. Upon close examination of the record, the most important function alleged by plaintiff which NAC performs for Harbert is receiving telephone messages. [Pataki Affidavit ¶ 10]. I do not believe this rises to the level of "importance" contemplated by New York courts to constitute doing business. In sum, plaintiffs' allegations do not suffice to show that any NAC activities constitute "doing business" on behalf of Harbert.

Plaintiffs point to a New York case, *Balogh v. Rayner-Smith*, 30 A.D.2d 788, 291 N.Y.S.2d 440 (1st Dep't 1968), to argue that participation in a partnership in New York is sufficient to confer personal jurisdiction over a non-resident defendant. Plaintiff overlooks the fact, however, that *Balogh* was decided under C.P.L.R. § 302, the New York long-arm statute. This distinction is not without significance. In *Balogh*, the cause of action arose out of partnership activities in New York. Here, plaintiffs' claims do not relate to any NAC activities. NAC was not a party to the contracts which form the basis of the complaint nor did it participate in any way to the formation of these contracts. As a result, NAC activities cannot form the basis of personal jurisdiction over defendant Harbert in New York either under § 301 or 302 of the C.P.L.R.

■ In arguing defendant's presence in New York, plaintiffs also point to Harbert's joint venture relationship with Howard, a Swiss corporation, who was to participate in the Saudi Arabian projects arranged by SADO. Howard is allegedly a subsidiary of International Telephone and Telegraph, a corporation with offices and employees in New York City. This is further proof, according to plaintiff, that the defendant is doing business in New York. [Dogan Affidavit ¶ 14]. I disagree. Entering a joint venture with another foreign corporation does not constitute "doing business" in New York merely because that foreign corporation is a subsidiary of a New York corporation. The subsidiary itself is not subject to New York jurisdiction unless it can be found to be a "mere department" of the New York parent. *Taca International Airlines v. Rolls Royce of England*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). Even if plaintiff could show that Howard was a "mere department" of ITT, I do not believe Harbert's joint venture relationship with Howard, taken alone or in conjunction with other factors brought forth by the plaintiffs, bring the defendant any closer to doing business in the state "with a fair measure of permanence and continuity." *Tauza, supra*.

■ The plaintiffs also point to several of Mr. Harbert's activities to further argue that the defendant was "doing business" in New York. The plaintiff alleges that "Bill Harbert left numerous messages with my office in Westchester that he had been in New York and wanted to discuss our business relationship in New York when mutually convenient." [Dogan Affidavit ¶ 13]. More significant to plaintiffs' argument are several instances where the parties met in New York City. According to both parties, a meeting took place in August, 1979, between Mr. Harbert and Dogan at plaintiffs' attorney's offices in New York City. At this meeting, the parties apparently discussed their deteriorating relationship under the contracts. Furthermore, plaintiffs allege two other meetings with Mr. Harbert in New York City. At one of these meetings, the Bahrain agreement was executed. The plaintiff fails to specify further the circumstances surrounding these meetings. Mr. Harbert acknowledges meeting with Dogan at Kennedy Airport more than once while on his way to the Middle East. [Harbert Affidavit ¶ 13]. These occasional visits to New York do not constitute "doing busi-

ness" under C.P.L.R. § 301. Occasional visits, even to negotiate a contract, have been found to fall short of the "doing business" standard. *See Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 953 (2d Cir. 1967); *Meunier v. Stebo, Inc.*, 38 A.D.2d 590, 591, 328 N.Y.S.2d 608, 611 (2d Dep't 1971).

## 2. *Long Arm Jurisdiction—C.P.L.R. § 302*

Plaintiffs' second asserted basis for personal jurisdiction is New York's long-arm statute, C.P.L.R. § 302(a), which provides in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

■ The United States Constitution limits the invocation of such long-arm statutes to only those instances where defendants voluntarily come to New York to invoke the benefits and protection of New York law. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

### a. 302(a)(1)

■ For personal jurisdiction to be sustained under § 302(a)(1) the defendant must engage in a transaction of business in New York out of which the claim arises. *Chertok v. Ethyl Corp. of Canada*, 341 F.Supp. 1251, 1254 (S.D.N.Y.1972). The issue for this court is whether looking at the totality of the defendant's activities in New York purposeful acts have been performed in New York by the defendant in connection with the disputed contracts. *See Sterling Nat. Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975). Plaintiffs contend the defendant transacted business by negotiating and executing the Bahrain agreement in New York, and by meeting with Dogan on two other separate occasions here.

It is undisputed that Dogan and Harbert executed the Bahrain agreement in New York on September 8, 1976. Plaintiffs further allege that "the terms of this agreement were negotiated in New York City." [Dogan Affidavit ¶ 11]. The circumstances of the negotiations, however, were not specified by the plaintiff. Defendant alleges that this agreement was negotiated over the telephone when Harbert was in Alabama [Harbert Affidavit ¶ 18].

New York courts have placed a strong emphasis on the locale of contract negotiations to find that a defendant has transacted business in New York. *See, e. g., George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). Plaintiffs here, however, have failed in their burden of showing by a preponderance of the evidence that significant negotiations between the parties took place in New York. Meetings between the parties apparently did take place on occasions where the defendant was waiting at Kennedy International Airport for connecting flights to the Middle East. (Harbert Affidavit, ¶ 13). No such meeting, however, involved contract negotiations according to the proof provided. The contract was merely executed there.

Under § 302(a)(1), mere execution of a contract in New York is not dispositive of the question. *See Aurea Jewelry Creations, Inc. v. Lissona*, 344 F.Supp. 179 (S.D.N.Y.1972). In addition, it is settled law in New York that interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver. *See Sayles Biltmore Bleacheries, Inc. v. Soft-Fab Textile Processors, Inc.*, 440 F.Supp. 1010, 1013 (S.D.N.Y.1977).

Plaintiffs point to two other specific meetings between the parties in New York to assert that the defendant transacted business here. In February, 1977 the parties met in New York. The meeting took place at Kennedy Airport, according to Harbert, while he was on route to the Middle East and awaiting a connecting flight. [Harbert Affidavit ¶ 13]. Another meeting took place in August, 1979 between the parties, this time at plaintiffs' attorney's office in New York City. For the reasons discussed below, I do not find that either of these meetings taken alone, together or in conjunction with any of defendant's other alleged activities constitutes sufficient purposeful activity to support long-arm jurisdiction.

Plaintiff argues that when a non-resident principal comes to New York to confer with its agent, the principal has committed a purposeful act here. It has been held that where a principal comes to New York to meet with his agent, a transaction of business may be found under § 302(a)(1). *Wisehart, Friou & Koch v. Hoover*, 473 F.Supp. 945, 949 (S.D.N.Y.1979). I do not agree, however, with plaintiffs' argument that *Wisehart* controls in this case. In *Wisehart*, the plaintiff, a law firm, was an agent in New York for the defendant. The plaintiff acted as financial advisor, estate planner and litigator for the defendant on matters in New York. The defendant or his representatives met with his agent in New York numerous times to actually conduct the defendant's business. At these meetings, the parties discussed the administration of a bank loan to the defendant and the rearrangement of the defendant's entire loan structure. Moreover, at several other meetings the parties discussed litigation involving the defendant and actually negotiated a loan with a bank. *Id.* at 950.

By contrast, it has not been shown that a Harbert representative has come to New York to engage in such extensive discussions with the plaintiffs. I do not find that the nature and purpose of Mr. Harbert's meetings with Dogan supply the minimum contacts necessary to subject Harbert to the jurisdiction of New York courts. The airport meetings, including the February, 1977, meeting took place while the defendant was on route to the Middle East. If Mr. Harbert's only available route to the Middle East was through New York, then it would be more difficult for plaintiffs to show that these meetings were of sufficient quality to constitute a voluntary invocation of the benefits and protections of New York law. *See Reiner Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). In any case, there is no indication that Harbert engaged in any significant business activity with Dogan at these brief meetings. In February, 1977, the parties did discuss a Saudi threat to end Harbert's rights to bid on projects [Dogan Affidavit ¶ 12; Harbert Affidavit ¶ 13]; however, no proof of further negotiations effecting the contract relationship between the parties has been proffered. New York law is clear that physical presence alone cannot transform business dealings into business transactions. *See Presidential Realty Corp. v. Michael Square West, Ltd.*, 44 N.Y.2d 672, 673, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978).

Plaintiff further asserts that under *Pneumo-Flo Systems v. Universal Machinery*, 454 F.Supp. 858 (S.D.N.Y.1978) the defendant is subject to personal jurisdiction because the meetings between the parties "were essential to the formation or continuance of the contract which has given rise to the litigation," *Id.* at 866. There are no facts averred by the plaintiff in this case which show that the meetings which took place at Kennedy were essential to the contract relationship between the parties.

The plaintiff also asserts that the August 29th meeting between the parties at Dogan's attorney's office in New York constitutes a transaction of business here since the discussions were essential to the continuance of the contract between the parties. I disagree. Dogan declares that "at the meeting we discussed the ongoing relationship between the parties and the obligations I felt Harbert owed to me and SA/DO." (Dogan Affidavit, ¶ 13). Such a meeting to discuss differences under an existing contract has no jurisdictional significance in New York. *See Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300 (2d Cir. 1968); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967).

### b. 302(a)(2), (3)

■ Plaintiffs' second asserted basis for long-arm jurisdiction is that the defendant committed a tortious act within the state under C.P.L.R. 302(a)(2) by fraudulently inducing plaintiffs to enter into the agreements between the parties. Alternatively, the plaintiff asserts that the same tortious act occurred without the state under 302(a)(3) causing injury within the state. Neither of these theories operate in this case to bootstrap the plaintiff into obtaining personal jurisdiction over the defendant. First, a tortious act within the state has not been shown by the plaintiffs. The only possible fraud by the defendant which can be gleaned from the plaintiffs' submissions are those which took place during the negotiation process. The pertinent negotiations took place either over the telephone while the defendant was in Alabama or when the parties were in the Middle East. The New York Court of Appeals has held that no tort was committed in New York where non-residents made false representations outside New York which induced plaintiffs to rely upon those representations in New York, with resulting injury in New York. *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966).

■ Second, I do not find that the plaintiffs sustained any injury within the state under 302(a)(3). Determining the situs of a tortious injury that is commercial rather than physical has proven to be a difficult task for the courts. *See* McLaughlin, Practice Commentary, C.P.L.R. § 302, p. 24 (McKinneys Supp.1979). It is settled, however, that an injury does not occur in New York simply because the plaintiff is domiciled, incorporated or doing business there. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir. 1971); *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir. 1965). In this case, plaintiffs claim damages due to defendant's fraudulent inducement of them to enter into a contract to use their best efforts in Saudi Arabia and Bahrain to secure a construction contract. (Amended Complaint, pp. 11–13).

■ In a commercial tort situation, the place of injury will usually be deemed to be the place where "the critical events associated with the dispute took place." *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374, 1380 (S.D.N.Y.1975). In such cases, injury has been found at the place where the business was lost, i. e., where the customers of the plaintiff or the goods to be sold were located, rather than where the injured company was domiciled. *See e. g., Sales Arm, Inc. v. Automobile Club of So. Cal.*, 402 F.Supp. 763 (S.D.N.Y.1975); *American Eutectic, supra; Fantis Foods, Inc. v. Standard Importing*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). I have not found nor have the parties offered any New York case under 302(a)(3) involving the tort of fraudulently inducing one to enter into a contract. The New York Court of Appeals' most recent interpretation of 302(a)(3), however, appears applicable. It reaffirms the principle that

> the residence or domicile of the injured party within the state is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the state and a closer expectation of consequences within the state than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.

*Fantis Foods*, 49 N.Y.2d at 326, 425 N.Y. S.2d at 787, 402 N.E.2d at 126.

Here, the contracts between the parties called for the plaintiffs to arrange construction projects for the defendant in the Middle East. As previously stated, no New York transaction was involved in the formation of any of these contracts. The loss that plaintiffs incurred from this fraud cannot be said therefore to result from any New York transaction. Negotiation efforts made by the plaintiffs pursuant to the contracts involved Middle Eastern parties and an Alabama client. Thus, New York injury sustained by the plaintiffs would necessarily be indirect.

### III.

Plaintiffs' final basis for asserting jurisdiction over the defendant rests on two clauses found in the Riydah and Bahrain agreements. These clauses read as follows:

GOVERNING LAW AND LITIGATION: This agreement shall be governed by the laws of New York City, New York, U.S.A.

(Exh.A, p. 2, Amended Complaint)

GOVERNING LAW AND LITIGATION: This agreement shall be governed by the arbitrate laws of New York City, N.Y.

(Exh.C., p. 2, Amended Complaint)

■ With respect to both clauses, New York law is well settled that a choice of law provision in a contract does not constitute a voluntary submission to personal jurisdiction. *McShan v. Omega Louis Brandt et Frere, S. A.*, 536 F.2d 516, 518 (2d Cir. 1976). I cannot entertain parole evidence which suggests these clauses were intended to be a submission to personal jurisdiction when their clear language indicates that they were choice of law provisions.

For the foregoing reasons, defendant's motion to dismiss this case for lack of personal jurisdiction is granted.

SO ORDERED.

### ON MOTION TO REARGUE

Plaintiffs in this action move to reargue a motion by the defendant to dismiss this action for lack of personal jurisdiction. On October 20, 1980, I decided that motion in favor of the defendant and dismissed the case. Plaintiffs seek leave to reargue on the grounds that my prior decision makes a factual mistake regarding the circumstances surrounding the negotiation of an agreement between the parties. This agreement, known as the Bahrain agreement, provides the basis for one of plaintiffs' claims. Plaintiffs allege that under their version of the negotiations, defendant is subject to the jurisdiction of this court.

I agree that the mistake asserted might reasonably have altered my decision; therefore, plaintiffs' motion to reargue is hereby granted.

I turn therefore to the merits of the motion to dismiss this action. In my decision of October 20, 1980, I found that although the parties clearly executed the Bahrain agreement in New York on September 8, 1976, there was insufficient proof to show that significant contract negotiations took place at that time. As a result, I held that the plaintiffs had not met their burden of showing that the defendant transacted business in New York within the meaning of § 302(a)(1) of the New York Civil Practice Law and Rules [hereinafter "C.P.L.R."]. This conclusion was based on an assessment of the sworn statements submitted by both parties. Contrary to plaintiffs' statement that the contract was negotiated in New York, the defendant asserted that the contract was discussed over the telephone and was merely signed at Kennedy Airport. [Defendant's Memorandum in Opposition to Motion to Reargue, p. 7].

Plaintiffs now submit an affidavit of Dr. Dogan which describes the negotiations in New York in greater detail than heretofore provided. Rather than make the mere assertion that the contract was "negotiated in New York", the recent Dogan Affidavit describes a two-hour meeting where at least four proposals were discussed by the parties and where one proposal was finally agreed upon. [Dogan Affidavit ¶ 5]. These allegations more clearly state a purposeful transaction in New York within the meaning of C.P.L.R. § 302(a)(1). *Cf. George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.

S.2d 844, 363 N.E.2d 551 (1977). Had this information been presented initially, my earlier decision would have been different.

█ In light of Dogan's recent affidavit, plaintiffs properly allege jurisdiction under C.P.L.R. § 302(a)(1) and may therefore pursue their claim under the Bahrain agreement.

█ Plaintiffs also move for leave to conduct discovery of defendant in an effort to find facts to show that the New York offices of NAC, a joint venture between Harbert and three other construction companies, provide important services for Harbert. Such a finding would demonstrate Harbert's presence in New York for jurisdictional purposes. This motion is denied.

Plaintiffs have already argued to this court that Harbert uses NAC offices in New York for Harbert purposes. Those services which were allegedly provided by NAC for Harbert, such as answering the telephone, already have been found by me to not constitute doing business here. It is clear from the record before me that NAC has a finite purpose which is unrelated to Harbert's regular business. Plaintiffs would like the opportunity to discover facts which might show that NAC provides important services for Harbert in New York. Under the circumstances, I will not permit plaintiffs to go on a fishing expedition in an effort to find something to hang their jurisdictional hat on.

My prior order granting defendant's motion to dismiss this action is modified as follows. Defendant's original motion to dismiss is denied insofar as plaintiffs' claim under the Bahrain agreement is concerned. Defendant's motion to dismiss is granted in all other respects.

SO ORDERED.