**PALACE EXPLORATION COMPANY, Plaintiff,**

v.

**PETROLEUM DEVELOPMENT COMPANY, Defendant.**

**No. 98 Civ. 248(RLC).**

United States District Court, S.D. New York.

Nov. 13, 1998.

Magistrate Judge Buchwald stayed all proceedings in the New York action pending the outcome of the instant motion.

428

Fischbein●Badillo●Wagner●Harding, Palace Exploration Company, New York, New York (Jeffrey Mitchell, of counsel), for plaintiff.

Wolff & Samson, Petroleum Development Company, New York, New York (Darryl Weissman, of counsel), for defendant.

## *OPINION*

CARTER, District Judge.

Plaintiff, Palace Exploration Company ("Palace"), brings this diversity action seeking the recision of a contract it entered into with defendant Petroleum Development Company ("PDC") on the grounds of false misrepresentation and breach of contract. Defendant moves for dismissal pursuant to Rules 12(b)(2) and 12(b)(3), F.R. Civ. P., or under the common law doctrine of forum non conveniens. In the alternative, defendant seeks transfer to the Northern District of Oklahoma pursuant to 28 U.S.C. 1404(a).

## FACTS

Palace is a Delaware corporation with its principal place of business in New York, and is managed by Bistate Oil Management Corporation, which oversees oil and gas operations throughout the United States. PDC is an Oklahoma corporation with its principal place of business in Oklahoma. PDC has no offices, agents, property, bank accounts, or assets in New York, and has never been licensed or formally authorized to conduct business in the state. Furthermore, according to its president, PDC has never sent any officer, employee, or agent into New York for any purpose. The company is engaged in the business of oil and gas exploration in Oklahoma and its surrounding states.

The first contact between Palace and PDC occurred in late 1996 when PDC purchased an assignment of certain rights belonging to Plains Petroleum Operating Company ("Plains"), a nonparty in this action, in a gas exploration venture in Ellis County, Oklahoma. At the time, Palace owned an interest in the Plains venture and agreed to "farmout [sic]" its rights to PDC. During the negotiation of the Plains arrangement, Paul Howard ("Howard"), the Vice President of Palace, expressed an interest in being informed of future oil or gas ventures in which PDC planned to participate, and in which parties such as Palace could purchase a working interest.

In 1997, two such opportunities arose. On both occasions, PDC contacted Palace in New York from its Oklahoma office to inform Palace of the opportunities. As a result, Palace and PDC entered into two contracts involving exploration ventures, one in Oklahoma, the other in Arkansas. It is the agreement involving the venture in Oklahoma (the "Agreement") that is at the core of this litigation.

The facts surrounding the formation of the Agreement are not in dispute. In July 1997, William Ingram ("Ingram"), the

president of PDC, telephoned Howard to inform Palace about an opportunity to participate in the drilling of an oil well in Pittsburg County, Oklahoma (the "Well"). Subsequently, Ingram and Howard engaged in several telephone calls concerning the cost of drilling the Well. On or about July 23, 1997, Ingram faxed Howard information regarding the Well. Ingram then represented to Howard over the telephone that the cost to drill the Well would be approximately $280,000. Palace committed to the venture shortly thereafter and signed a commitment letter sent by PDC whereby Palace agreed to purchase a 50 percent interest in the Well for an initial purchase price of $20,000 and to pay half of the costs and expenses incurred in drilling and equipping the Well for production. On August 4, 1997, PDC sent the final Exploration Agreement to Palace, which was then signed and executed by Palace and sent back to PDC. On August 26, 1997, Palace signed and returned an Authorization for Expenditure (the "AFE") to PDC. The AFE estimated, as Ingram had earlier stated to Howard, that the drilling costs would be $280,000.

However, the drilling costs to date have exceeded $735,000. Evidently, the substantial cost overrun is the result of subsurface problems discovered after PDC began drilling the Well. Thus far, as pursuant to the Agreement, Palace has made three payments to PDC from its New York bank account: (1) $20,000, the agreed upon initial purchase price, on August 26, 1997; (2) $140,000, which equaled half of the estimated drilling costs, on September 11, 1997; and (3) $218,057.93, which equaled the balance of Palace's share of the actual drilling costs at the time, on December 12, 1997.

Palace seeks recision of the Agreement, alleging that PDC fraudulently induced it to enter into the venture. Specifically, Palace asserts that PDC was aware of similar problems experienced by Amoco, which had drilled a test well in close proximity to the Well, and withheld such information from Palace in order to induce it to enter into the contract. Furthermore, Palace alleges that in addition to concealing the prospect of serious cost overruns, PDC falsely assured Palace on many occasions that it could drill the Well for the estimated $280,000 or less.

Palace filed suit on December 3, 1997 in New York state court, seeking the award of recisionary damages equal to all amounts that it had paid pursuant to the terms of the contract. The case was subsequently removed to this court on PDC's request. PDC now moves for a dismissal on the grounds that it is not subject to personal jurisdiction in this court under Rule 12(b)(2), F.R. Civ. P., or for improper venue under Rule 12(b)(3), F.R. Civ. P. Alternatively, PDC seeks a transfer to the Northern District of Oklahoma pursuant to 28 U.S.C. 1404(a). Lastly, PDC seeks a dismissal under the doctrine of forum non conveniens.

## DISCUSSION

### I. Personal Jurisdiction

Personal jurisdiction in a diversity action is determined by the laws of the forum state in which the district court sits; therefore the law of New York is applicable to this case. *See United States v. First Nat'l City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222–23 (2d Cir.1963) (en banc). Furthermore, the exercise of jurisdiction must comport with federal constitutional principles of due process. *See Mayes v. Leipziger,* 674 F.2d 178, 183 (2d Cir.1982).

Rule 12(d) of the F.R. Civ. P. grants the court broad discretion to hear and decide a motion to dismiss for lack of personal jurisdiction before trial or to defer the matter until trial. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986). The court may decide the motion solely upon pleadings and affidavits or by an evidentiary proceeding. *See id.; Falik v. Smith,* 884 F.Supp. 862, 864

(S.D.N.Y.1995) (Carter, J.). Where the court chooses not to conduct a full-blown evidentiary hearing before trial, plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). However, it remains incumbent upon the plaintiff to ultimately establish that jurisdiction is proper by a preponderance of the evidence at trial. *See id.; Mayes,* 674 F.2d at 182 n. 3. In the instant case, no evidentiary hearing has been held and thus the court need only determine whether Palace has made a prima facie showing of jurisdiction, construing all pleadings and affidavits in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

### A. Jurisdiction under CPLR 302(a)(1)

▮ Plaintiff first contends that the court has jurisdiction pursuant to Section 302(a)(1) of the New York Civil Practice Law ("CPLR"). CPLR § 302(a)(1), which is part of New York's long arm statute, allows personal jurisdiction over any non-domiciliary who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state" when the cause of action is related to the transaction or the contract. *See CutCo Indus., Inc.,* 806 F.2d at 365; *Manhattan Life Insur. Co. v. A.J. Stratton Syndicate (No. 782),* 731 F.Supp. 587, 592 n. 7 (S.D.N.Y.1990) (Carter, J.) (test requires "some articulable nexus between the business transacted and the cause of action sued upon.") (citation omitted). The "transacting business" test under CPLR § 302(a)(1) requires not regular and systematic activities but rather the purposeful availment of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *See CutCo Indus., Inc.,* 806 F.2d at 365 (citation omitted); *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 111–12 (S.D.N.Y.1993) (Cedarbaum, J.); *PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 118

(S.D.N.Y.1990) (Sweet, J.). Thus, § 302(a)(1) requires only a minimal quantity of activity, provided that it is of the right nature and quality. *See United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership,* 825 F.Supp. 594, 595 (S.D.N.Y.1993) (Conboy, J.) ("Transacting business ... require[s] a certain quality, rather than a specific quantity, of contacts with the forum."). *See also Parke–Bernet Galleries Inc. v. Franklyn,* 26 N.Y.2d 13, 18, 256 N.E.2d 506, 508–09, 308 N.Y.S.2d 337, 340–41 (1970) (finding one phone call constituted "transaction of business"). Furthermore, in determining whether defendant's contacts are of the appropriate nature, the court must examine the totality of the circumstances. *See Sterling Nat'l Bank v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975); *Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175, 178 (S.D.N.Y.1995) (Wood, J.) ("no precise formula" in determining jurisdiction under CPLR § 302(a)(1)).

Palace asserts that PDC has "transacted business" within the meaning of CPLR § 302(a)(1) based upon PDC's telephone calls, facsimile transmissions, and mailings to New York in connection with the negotiation and execution of the Agreement. Furthermore, Palace emphasizes that even though PDC never entered New York in connection with the Agreement, New York was the situs of every communication originating from Palace. That is, Palace negotiated the Agreement from New York, signed and executed the Agreement in New York, and paid for its half of the drilling costs from its bank account in New York. Palace also contends that PDC purposely availed itself of the privileges of conducting activities in New York by soliciting Palace's involvement in the Well.

▮ It is well-settled law that the fact that the defendant has never been physically present in New York is not dispositive in determinations of jurisdiction under CPLR § 302(a)(1). *See Mayes,* 674 F.2d at 184; *Wilhelmshaven Acquisition Corp.,*

810 F.Supp. at 112 (physical presence not a prerequisite); *United States Theatre Corp.*, 825 F.Supp. at 596 (visits to forum of "variable significance" for jurisdiction analysis). However, it is also well-settled that, generally, telephone and mail contacts do not constitute "transacting business" under the statute. *See Fiedler v. First City National Bank*, 807 F.2d 315, 317 (2d. Cir.1986); *PaineWebber*, 748 F.Supp. at 119. *See also Lawrence Wisser & Co. v. Slender You, Inc.*, 695 F.Supp. 1560, 1562 (S.D.N.Y.1988) (Sweet, J.) (80 phone calls and 30 faxes did not warrant jurisdiction). Accordingly, Palace relies heavily in its brief on two cases in which defendant's interstate communications were found sufficient to confer jurisdiction.

In the first of those cases, *Parke–Bernet Galleries, Inc.*, 26 N.Y.2d at 17, 256 N.E.2d at 508, 308 N.Y.S.2d at 340, the defendant Franklyn, a resident of California, made one phone call in which he received and transmitted bids in an art auction being held in New York City. In sustaining jurisdiction, the New York Court of Appeals noted that the circumstances fell between "the situation where a defendant was physically present at the time the contract was made—the clearest sort of case in which our courts would have 302 jurisdiction—and the situation where a defendant merely telephones a single order from outside the State—a case in which our courts would not have such jurisdiction." *Id.* (citations omitted). Although he never entered the state, personal jurisdiction was appropriate over Franklyn because he "projected himself into the auction room in order to compete with the other prospective purchasers who were there." *See id.*, 26 N.Y.2d at 18, 256 N.E.2d at 508, 308 N.Y.S.2d at 340. Similarly, in *CT Chemical (USA), Inc. v. Horizons Int'l*, 106 F.R.D. 518, 519–20 (S.D.N.Y.1985) (Sweet, J.), the defendant negotiated two contracts over the telephone and through the mail. The court, relying primarily on the reasoning in *Parke–Bernet Galleries, Inc.*, found defendant's telephone and mail contacts suf-

ficient to confer jurisdiction under CPLR § 302(a)(1). *See id.* at 521–22.

While the cases cited by Palace shed some light on the jurisdictional determination in the instant case, the court nevertheless finds other authorities more on point, and thus more compelling. In *Dogan v. Harbert Constr. Corp.*, 507 F.Supp. 254, 259 (S.D.N.Y.1980) (Duffy, J.), the defendant entered into a contract with the plaintiff involving a project in Saudi Arabia. The plaintiff in *Dogan* contended, as Palace has here, that the defendant had transacted business under CPLR § 302(a)(1) by negotiating the agreement over the telephone with the plaintiff who was located in New York. *See id.* at 260. The court, in denying jurisdiction, stated that "it is settled law in New York that interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver." *Dogan*, 507 F.Supp. at 261.

Similarly, in *Wilhelmshaven Acquisition Corp.*, 810 F.Supp. at 110, the defendants entered into a contract with the plaintiff regarding the purchase of an oil refinery in Germany. The plaintiff in that case also argued that the defendants had transacted business by negotiating the agreement through correspondence, telephone calls, including a video conference call, and fax transmissions. As in the instant case, the plaintiff cited *Parke–Bernet Galleries, Inc.* and *CT Chemical (USA), Inc.* for its assertion that the defendants were subject to personal jurisdiction under CPLR § 302(a)(1). *See id.* at 112–13. The court, in holding that the defendants' interstate communications had not projected them into events taking place in New York, distinguished *Parke–Bernet Galleries, Inc.* by noting that in *Parke–Bernet Galleries, Inc.*, the "center of gravity of the business transacted was New York, and the defendant[ ] participated by telephone in events taking place in New York." *Id.* at 112. The circumstances in *Wilhelmshaven Acquisition Corp.*, though, were significantly different; "contract negotiations were si-

multaneously taking place in New York and London," and the "center of gravity of the transaction was an oil refinery in Germany." *Id.* at 113. The court also distinguished *CT Chemical (USA), Inc.* by pointing out that the defendant there was physically present in New York for a post-execution meeting. *See id.* at 112.

Like the defendants in *Dogan* and *Wilhelmshaven Acquisition Corp.*, PDC's contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state. *See also Fiedler*, 807 F.2d at 318 ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.") (citation omitted). Unlike the defendant in *Parke–Bernet Galleries, Inc.*, PDC's communications did not project it into activities occurring in New York. *See also Technology Products Int'l v. Integrated Electronics, Inc.*, 1986 WL 2413, *2 (S.D.N.Y. Feb. 19, 1986) (Leisure, J.) ("*Parke–Bernet* can be read for the proposition that where the interstate communication is the transaction, and not merely a conduit to establish a contract or course of dealing between the parties, then jurisdiction can be based on the communication of the non-domiciliary with New York."). Lastly, unlike the defendant in *CT Chemical (USA), Inc.*, PDC has never been physically present in New York. See *Wilhelmshaven Acquisition Corp.*, 810 F.Supp. at 112 ("To the extent that § 302(a)(1) jurisdiction in [*CT Chemical (USA), Inc.*] was based on mail and telephone conferences alone, it is contrary to the weight of authority.") (collecting cases). Thus, while Palace gives great weight to the fact that it was located in New York for the entire length of the negotiations, the proper focus of the jurisdictional inquiry under CPLR § 302(a)(1) is on the defendant's activities, not the

plaintiff's presence, in the state. *See Galgay*, 504 F.2d at 1065.

Palace's remaining arguments for jurisdiction under CPLR § 302(a)(1) can be quickly addressed. First, Palace contends that PDC "set foot", and thus transacted business, in New York because the contract was executed in the state upon Palace's signature. However, the court finds, as the Second Circuit did in *Galgay*, that the execution of the contract in New York upon the plaintiff's signature is insignificant in determining whether defendant's activities in New York are sufficient under CPLR § 302(a)(1). *See id.*

Palace also asserts that the fact that PDC initiated the contact between the parties is dispositive. However, this court has repeatedly denied jurisdiction despite finding that the defendant initiated contact with a plaintiff located in New York. *See, e.g., Premier Lending Services, Inc. v. J.L.J. Associates*, 924 F.Supp. 13, 15 (S.D.N.Y.1996) (Parker, J.); *Technology Products Int'l*, 1986 WL 2413, at *1; *Dogan*, 507 F.Supp. at 256. Furthermore, "New York courts have repeatedly expressed the rule that solicitation alone is not enough to acquire jurisdiction over a non-domiciliary defendant." *Technology Products Int'l*, 1986 WL 2413, at *1 (collecting cases).

Thus, the court finds that Palace has failed to make a prima facie showing that PDC has "transacted business" within the meaning of CPLR 302(a)(1).

**B. Jurisdiction under CPLR 302(a)(3)(ii)**

Palace further contends that the court may exercise jurisdiction over PDC under CPLR § 302(a)(3)(ii) of New York's long arm statute. Section 302(a)(3)(ii) permits jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he ... (ii) expects or should reasonably expect the act to have conse-

quences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). It is settled in New York that "where a defendant knowingly sends a false statement into a state intending that it be relied upon," as is alleged by Palace here, "he has, for jurisdictional purposes, acted outside the state."[1] *Marine Midland Bank v. Keplinger & Associates,* 488 F.Supp. 699, 703 (S.D.N.Y.1980) (Duffy, J.). *See also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 898 (2d Cir.1980); *Bankers Trust Co. v. Mora,* 523 F.Supp. 285, 287 (S.D.N.Y. 1981) (Duffy, J.).

PDC disputes the assertion that Palace has suffered an injury in New York within the meaning of the statute. PDC argues that the event which caused the injury was the difficulty in drilling the Well in Oklahoma. The fact that Palace paid its half of the drilling costs from its bank account in New York is jurisdictionally irrelevant, according to PDC.

▮▮▮ PDC is correct in asserting that an injury resulting from an out-of-state tort does not have its situs in New York merely by virtue of the fact that the injured party resides there and suffers pecuniary loss there. *See Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990); *Atalanta Corp. v. Polskie Linie Oceaniczne,* 683 F.Supp. 347, 350 (S.D.N.Y.1988) (Carter, J.). Indeed, the situs of the injury is not the location in which plaintiff suffered financial loss, but where "the critical events associated with the dispute took place." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971). *See also Mareno,* 910 F.2d at 1046 (situs is "location of

the original event which caused the injury") (citation omitted).

▮▮▮ Nevertheless, while determining the situs of an injury under § 302(a)(3) is complicated by the fact that commercial torts are "not the type which ... section [302(a)(3) ] was primarily designed to cover," *American Eutectic Welding Alloys Sales Co.,* 439 F.2d at 432, the law of this Circuit is that plaintiff's reliance in New York on defendant's misrepresentation fixes the situs of the injury in New York. *See Hargrave,* 636 F.2d at 899; *Bankers Trust Co.,* 523 F.Supp. at 287; *Mije Associates v. Halliburton Services,* 552 F.Supp. 418, 420 n. 5 (S.D.N.Y.1982) (Knapp, J.) ("[T]he tort of fraud [is] not 'complete' until the fraudulent statements [are] relied upon in New York...."). *Hargrave* is illustrative of this point. In *Hargrave,* the plaintiffs alleged that the defendant, a California corporation, had misrepresented the condition of wine grape vines that were subsequently discovered to be diseased. *See Hargrave,* 636 F.2d at 898. The plaintiffs, relying on the alleged misrepresentations, purchased the vines which were then shipped to New York by the defendant. *See id.* The defendant had claimed that the "injury" was located in California because that was where the infection of disease would have occurred. *See id.* at 899.

The *Hargrave* court, however, disagreed. The injury was not, as the defendant suggested, the infliction of injury to the vines in California; rather, the "tort alleged is the making of knowingly false statements as to the condition of the vines." *Id.* at 899. Indeed, it did not matter whether the vines existed in the first place. Reasoned the court: "Had

---

1. Palace asserts in the alternative that PDC is subject to jurisdiction under CPLR § 302(a)(2) which grants jurisdiction over a defendant who "commits a tortious act within the state...." However, as noted by the cited cases, a false representation made out-of-state is considered a "tortious act without the state" and thus governed by CPLR § 302(a)(3). Section 302(a)(2) is strictly construed; the defendant must have been physi-

cally present in New York while making the representation. *See Reiss v. Steigrod,* 866 F.Supp. 747, 750 (S.D.N.Y.1994) (Sotomayor, J.); *Roth v. El Al Israel Airlines Ltd.,* 709 F.Supp. 487, 490 (S.D.N.Y.1989) (Kram, J.). Since there are no allegations that PDC made any representations concerning the Well while physically present in New York, Palace's assertion of jurisdiction under § 302(a)(2) is completely unsubstantiated.

[the defendant] made a fraudulent representation that it had vines to sell when it in fact had none, and had plaintiffs made payment from their domicile in New York for non-existent vines, it would have been obvious that plaintiffs had sustained injury in New York." Id. One "immediate and direct" injury caused by the allegedly tortious misrepresentations was the loss of money paid to the defendant from the plaintiffs in New York. *See id.* at 900. *See also Bankers Trust Co.*, 523 F.Supp. at 287 ("All payments to the defendant were sent from New York . . ., thus there was clearly injury in this state.").

■ Employing the reasoning of *Hargrave*, it is clear that the injury to Palace was not the subsurface drilling problems encountered in Oklahoma; rather, it was the payment of money by Palace from New York in reliance of PDC's alleged misrepresentations. Thus, the court finds that Palace has suffered an injury within the meaning of CPLR § 302(a)(3).

■ PDC further contends that Palace has failed to satisfy the requirement of CPLR § 302(a)(3)(ii) that the defendant "expects or should reasonably expect the act to have consequences in the state." Once again, the *Hargrave* decision provides guidance. As in *Hargrave*, "[t]his is not a case where a defendant commits a business tort such as unfair competition or diversion of opportunities in one state and the ultimate result is a loss of profits to the plaintiff which is fortuitously domiciled in another state." *Hargrave*, 636 F.2d at 900. Rather, this is a case where the defendant made a specific representation to the plaintiff in New York in order to induce the plaintiff to enter into a contract. Like the defendant in *Hargrave*, "the immediate consequence which [PDC] foresaw, indeed which it sought to bring about by its sales representations, was payment to it directly by a New York domiciliary." *Id. See also Keplinger & Associates*, 488 F.Supp. at 703 (jurisdiction found where defendant encouraged reliance on allegedly false geological reports). Thus, PDC's

contention that it did not expect or reasonably expect its allegedly false representation to have consequences in New York is without merit.

■ Lastly, the court must consider whether PDC "derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). Whether revenue is "substantial" under New York law is determined both on relative and absolute scales. *See Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 316 (S.D.N.Y.1986) (Carter, J.) (collecting cases); *Cavalier Label Co. v. Polytam, Ltd.*, 687 F.Supp. 872, 879 (S.D.N.Y.1988) (Ward, J.). A defendant's revenues from interstate and international commerce may be analyzed as a percentage of total revenues, or as an absolute number. *See id.* Neither approach is binding on the court, as the court may select whichever method is more appropriate in a particular case since each case must be decided on its own facts. *See id.*

■ In the instant case, neither party has devoted much attention to this issue in their briefs or affidavits. Palace asserts that PDC receives substantial revenue from interstate commerce on the basis of PDC's statement that it is "engaged in the business of oil and gas exploration and investment in Oklahoma and surrounding states." Given that Palace had paid over $378,000 to PDC under the Agreement and the fact that PDC has not refuted Palace's assertion so far, the court finds that Palace has sufficiently shown that it can meet this requirement under CPLR 302(a)(3)(ii).

For the foregoing reasons, the court finds that Palace has made a prima facie case of jurisdiction under CPLR 302(a)(3)(ii). Therefore, PDC's motion to dismiss under 12(b)(2), F.R. Civ. P., is denied.

## II.  Venue

The court next considers PDC's motion to dismiss for improper venue pursuant to

Rule 12(b)(3), F.R. Civ. P. PDC states that venue cannot be properly laid under 28 U.S.C. 1391(a) and therefore, the case should be dismissed.

■ Although venue in diversity cases is generally governed by 28 U.S.C. 1391(a), 28 U.S.C. § 1441(a) controls in actions which have been removed from state court. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953); *Totonelly v. Cardiology Associates of Corpus Christi, Inc.,* 932 F.Supp. 621, 622 (S.D.N.Y.1996) (Parker, J.). Under 28 U.S.C. § 1441(a), venue of the removed case is "the district and division embracing the place where such action is pending." *See also* 14C Charles A. Wright, Arthur R. Miller, Edward C. Cooper, *Federal Practice and Procedure,* § 3726, at 119–20 (3d ed. 1998) ("It therefore is immaterial that the federal court to which the action is removed would not have been in a district of. proper venue if the action had been brought there originally."). Since the case was removed to this court from New York state court, venue is proper in this district and PDC's motion to dismiss for improper venue is denied.

### III. Transfer

Even though venue is proper under 28 U.S.C. § 1441(a), a removed action may be transferred to another federal district where the case could have been brought "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). PDC seeks a transfer of the case to the Northern District of Oklahoma, the district in which PDC and the Well is located.

■ "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992). Furthermore, it is the burden of the moving party to demonstrate, by a clear and convincing showing, that transfer should be made.

*See Arrow Electronics, Inc. v. Ducommun Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989) (Leisure, J.).

■ The decision to transfer requires the balancing of several factors including the place where the operative facts occurred, the convenience to the parties and witnesses, plaintiff's choice of forum, the relative ease of access to sources of proof, availability of process to compel attendance of unwilling witnesses, the court's familiarity with the applicable state law, and the interest of justice. *See Totonelly,* 932 F.Supp. at 622–23. "The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses." *See Viacom Int'l v. Melvin Simon Prods.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991) (Sweet, J.); *Bordiga v. Directors Guild of America,* 159 F.R.D. 457, 462 (S.D.N.Y.1995) (Schwartz, J.). *See also Arrow Electronics, Inc.,* 724 F.Supp. at 265 ("In most cases, the convenience of the party and non-party witnesses is the most important factor in the decision whether to grant a motion for transfer.").

Here, PDC argues that Oklahoma is the place where the important witnesses and physical evidence can be found. PDC lists a number of non-party witnesses, all of whom reside in Oklahoma, who will testify as to the reasonableness in PDC's cost estimate and to the drilling conditions in areas surrounding the Well. Furthermore, PDC wants to call as witnesses the employees of the company that drilled the Amoco test well that Palace alleges should have been used as a basis for comparison for estimating costs on the Well. PDC anticipates that these employees will testify that the Amoco well was drilled in a fashion resulting in excess costs, a factor which would serve to show that the Amoco well was not an appropriate basis for comparison. Because PDC's non-party witnesses remain beyond the subpoena power of this court, PDC contends that a New York forum may deprive it of a defense.

**438**

Palace, on the other hand, identifies two party witnesses and zero non-party witnesses who reside in New York. The two party witnesses will testify as to the material misrepresentations PDC made to Palace in New York concerning the cost of drilling the Well. In addition, Palace contends that a transfer to Oklahoma would be extremely inconvenient because it would require the extended absence of its key operating officers.

■ While plaintiff's choice of forum is entitled to "substantial consideration," *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F.Supp. 144, 151 (S.D.N.Y.1989) (Carter, J.), the court finds that transfer is appropriate here. At bottom, Palace alleges that PDC's estimate of drilling costs was unreasonably low in view of drilling problems incurred by other companies in the same county and that PDC intentionally misrepresented the costs to Palace. Thus, witnesses who can testify as to the methods employed by other companies in drilling wells in Oklahoma will be crucial. In contrast, Palace can only offer two party witnesses who will be inconvenienced if this case is transferred to Oklahoma.

Furthermore, the choice of law clause in the Agreement weighs in favor of transfer to Oklahoma. The Agreement states that any disputes will be governed by Oklahoma law: "This agreement and all matters pertaining hereto, including but not limited to, matters of performance, non performance, breach, remedies, procedures, rights, duties and interpretation or construction shall be governed and deter-

mined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of Oklahoma shall govern."[2] While the fact that the law of a different jurisdiction governs the outcome of the case is accorded little weight, *see Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980) (Ward, J.), this court has nevertheless considered choice of law clauses as one factor in determining whether to transfer. *See, e.g., Viacom Int'l*, 774 F.Supp. at 868; *Noreiga v. Lever Bros. Co.*, 671 F.Supp. 991, 996–97 (S.D.N.Y.1987) (Kram, J.); *Arrow Electronics, Inc.*, 724 F.Supp. at 267.

Given the substantial connection to Oklahoma to this action and the fact that certain crucial non-party witnesses are not subject to process in this District, the court finds that the balance of convenience and the interests of justice weigh heavily in favor of transferring this case to Oklahoma.[3]

### CONCLUSION

For the reasons stated, defendant's motion to dismiss under Rules 12(b)(2) and 12(b)(3), F.R.Civ. P., is denied. Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted. The clerk of the court is directed to transfer this action to the Northern District of Oklahoma.

**IT IS SO ORDERED.**

---

**2.** Palace asserts that the choice of law clause is not applicable in this suit because the cause of action is grounded in tort, rather than contract, law. Palace compares the clause in question here to the forum selection clause in *S–Fer Int'l v. Paladion Partners*, 906 F.Supp. 211 (S.D.N.Y.1995) (Koeltl, J.). In *S–Fer Int'l*, the court held that the forum selection clause was limited to contract disputes since the clause stated, in relevant part: "Should either party institute legal suit or action for enforcement of any obligation contained herein . . . ." *See id.* at 213–14. However, a plain

reading of the clause in dispute here shows that it is broader than the one in *S–Fer Int'l*, as evident by the term: "all matters pertaining hereto, including but not limited to . . . ."

**3.** The court's decision that transfer is appropriate makes it unnecessary to consider PDC's motion to dismiss on the grounds of forum non conveniens. *See American Dredging Co. v. Miller*, 510 U.S. 443, 448 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).