**HALLWOOD REALTY PARTNERS, L.P., Plaintiff,**

v.

**GOTHAM PARTNERS, L.P., et al., Defendants.**

**No. 00 Civ. 1115(LAK).**

United States District Court, S.D. New York.

July 10, 2000.

---

Thomas J. McCormack, Beth D. Diamond, Maura K. Tully, Tami S. Stark, Chadbourne & Parke LLP, New York, NY, for Plaintiff.

Philip H. Schaeffer, J. Christopher Shore, White & Case LLP, New York, NY, for Defendants Gotham Partners, L.P. and Gotham Partners III, L.P.

Robert J. Giuffra, Jr., Sullivan & Cromwell, New York, NY, for Defendants Interstate Properties and Steven Roth.

Ronald H. Alenstein, D'Amato & Lynch, New York, NY, Joseph K. Hegedus, Lewis, D'Amato, Brisbois & Bisgaard LLP, Los Angeles, CA, for Defendant Private Management Group, Inc.

Gregory J. Joseph, Albert Shemmy Mishaan, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Defendant EFO Realty, Inc.

## OPINION

KAPLAN, District Judge.

This is an action by Hallwood Realty Partners, L.P. ("Hallwood") charging, *in-*

*ter alia,* that defendants Gotham Partners, L.P. and Gotham Partners, Ill, L.P. (collectively "Gotham"), EFO Reality, Inc. ("EFO"), Private Management Group, Inc. ("PMG") and others have violated Section 13(d) of the Securities and Exchange Act of 1934 [1] (the "Exchange Act") by working secretly as a group to purchase Hallwood's shares for the purpose of taking control of and fundamentally changing or liquidating Hallwood. Hallwood's allegations are set out in an opinion of this Court dated May 2, 2000, familiarity with which is assumed.[2] The matter now is before the Court on PMG's motion to dismiss for lack of personal jurisdiction over it or, in the alternative, to sever the claims against it and transfer them to the Central District of California.[3]

*Personal Jurisdiction*

PMG challenges personal jurisdiction on the ground that it lacks minimum contacts with New York State as it claims is required under *International Shoe Co. v. Washington* [4] and its progeny. Hallwood responds that PMG was duly served under a federal statute providing for nationwide service of process and, in consequence, that this Court properly may exercise personal jurisdiction over it. The issue, therefore, is the extent and basis of constitutional limitations on the exercise of personal jurisdiction by federal courts in cases in which a federal statute provides for nationwide service of process. Its resolution requires close attention to the evolution of expanded concepts of personal jurisdiction and the constitutional limits on its exercise.

A state court's exercise of personal jurisdiction historically was understood to derive from the court's territorial power over the defendant's person.[5] The limits on its exercise grew from the principle that states, as separate sovereigns in a federal system, were wholly authoritative within their own territories but without power to encroach on the territorial authority of other states.[6] On this basis, state courts were permitted to exercise jurisdiction over any person served within the forum.[7]

Over time, developments in commerce and transportation began to highlight the limited nature of this territorial conception. The requirement that the exercise of jurisdiction stem from the forum's exercise of sovereign power over a defendant within its territory meant that many doing business or traveling within a state were able to escape judgment of the courts of that state, even on claims stemming from their in-state activities, merely because they were not served with process in the jurisdiction.

In response, the Supreme Court began to proffer several new theories. It developed first the notion of implied consent. If a defendant conducted certain activities in the forum state, he or she was found impliedly to have consented to the jurisdiction of the courts of that state.[8] This approach began to address situations not covered by the older territorial view, as it permitted a state court to exercise person-

---

1. 15 U.S.C. § 78m(d).

2. *Hallwood Realty Partners L.P. v. Gotham Partners, L.P.,* 95 F.Supp.2d 169 (S.D.N.Y. 2000).

3. The Court disposed of the other aspects of PMG's motion, as well as motions by the other defendants to dismiss, in its May 2, 2000 opinion. *Id.* Further, on June 12, 2000, the Court denied PMG's motion insofar as it sought to dismiss the complaint and informed the parties that an opinion would follow. Memo Endorsement, Jun. 12, 2000, docket item 43.

4. 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

5. *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877).

6. *Id.* at 722.

7. *See id.,* 95 U.S. 714, 24 L.Ed. 565.

8. *See, e.g., Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); *St. Clair v. Cox,* 106 U.S. 350, 1 S.Ct. 354, 27 L.Ed. 222 (1882).

al jurisdiction over a defendant who had not been served in the state, but who nonetheless had conducted significant activities there. Nevertheless, the implied consent theory ultimately proved unsatisfactory. As a legal fiction, it provided no rigorous way to create principled constitutional limitations on jurisdiction. The doctrine therefore continued to evolve.

The Court next developed what has been called the "presence" theory, which based amenability to service on the nature and frequency of a defendant's activities in the forum state.[9] This approach addressed some of the concerns associated with the implied consent theory, as the notion of voluntary submission was discarded. However, no clear standard governing the level of contacts required for legal presence emerged. Consequently, lower courts divided sharply about how this doctrine should operate.

After several decades of divergent lower court opinions, the Supreme Court in 1945 attempted to define the doctrine more clearly in *International Shoe v. State of Washington*, which held that state courts may exercise personal jurisdiction over a defendant only where that defendant has "minimum contacts" with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."[10] This approach required consideration not only of the extent and frequency of a defendant's contacts with the forum state, but also of the nature of those contacts and the relationship between them and the subject matter of the litigation.[11]

*International Shoe* and its progeny have grounded their limitations on the exercise of personal jurisdiction over absent defendants in two dominant themes. Limitations on state courts' exercise of personal jurisdiction were said to stem in part from the Fourteenth Amendment's restrictions on the sovereign powers of the states in a federal system.[12] But they have rested also on a view of the Fourteenth Amendment as protecting a defendant's liberty interest in not being forced to litigate in a forum with which he or she has no ties.[13] These themes remain salient parts of

9. 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 1066, at 244 (2d ed.1987). *See, e.g., Philadelphia & Reading R. Co. v. McKibbin*, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917).

10. *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotations omitted).

11. *Id.*, 326 U.S. 310, 66 S.Ct. 154.

12. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("We have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution.... The sovereignty of each State ... implie[s] a limitation on the sovereignty of all of its sister States–a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment"); *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("[R]estrictions on the personal jurisdiction of state courts .... are more than a guarantee of immunity from in-convenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (In upholding personal jurisdiction, the Court stressed the forum state's "manifest interest in providing effective means of redress for its residents."); *Pennoyer*, 95 U.S. at 722 ("[E]xcept as restrained and limited by [the Constitution, the several States of the Union] possess and exercise the authority of independent States, .... [and each] possesses exclusive jurisdiction and sovereignty over persons and property within its territory.... [Likewise,] no State can exercise direct jurisdiction and authority over persons or property without its territory.").

13. 444 U.S. at 291–92, 100 S.Ct. 559 (The constitutionally required minimum contacts doctrine "perform[s] two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.").

Fourteenth Amendment personal jurisdiction jurisprudence to this day.

■ Federal courts of course are not subject to the constraints of the Fourteenth Amendment, which control only state action. They are subject instead to the Due Process Clause of the Fifth Amendment,[14] and it is far from clear whether that provision imposes identical limitations on their exercise of personal jurisdiction in federal question cases. Indeed, the question does not often arise. Under the Federal Rules of Civil Procedure, a defendant must be served either in the judicial district where he or she is found or pursuant to the long-arm statute of the forum state unless a federal statute provides for broader territorial limits.[15] As state long-arm statutes almost invariably allow service outside the judicial district in which the federal court sits, the *International Shoe* standard or, indeed, an even narrower state long-arm statute[16] usually controls the exercise of personal jurisdiction by federal district courts.

However, where the governing federal statute provides for nationwide service of process, as does the Exchange Act,[17] the question arises whether the Fifth Amendment permits the exercise of jurisdiction by federal courts in circumstances in which a state court of the forum state would be proscribed from proceeding pursuant to *International Shoe.*[18]

The issue has arisen most frequently in connection with the question whether foreigners, in order to be subjected to the personal jurisdiction of a federal court, need only have minimum contacts with the United States as a whole as opposed to minimum contacts with the forum state. Cases addressing this issue generally have fallen into one of two camps, with each drawing differently on the two dominant themes outlined above. Most have adopted the view that minimum contacts with the United States satisfy the Fifth Amendment in cases arising under federal law,[19] just as minimum contacts with the

**14.** *See Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 102, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (jurisdictional inquiry in federal question cases governed by the Fifth Amendment). The minimum contacts test as articulated in Fourteenth Amendment cases has been held to apply to federal courts sitting in diversity. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567–68 (2d Cir.), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996).

**15.** FED. R. CIV. P. 4(e).

**16.** The long arm statutes of some states, including New York, do not extend to the limits permitted by the Fourteenth Amendment.

**17.** 15 U.S.C. § 78aa. Other federal statues providing for nationwide service include the Federal Interpleader Act, 28 U.S.C. § 2361, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608, Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965, and the Clayton Act, 15 U.S.C. § 22.

**18.** The Supreme Court has yet to make a definitive statement on the issue. *See Asahi Metal Indus. Co. v. Superior Ct. of Calif.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92

n. * (1987) (plurality opinion) ("We have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of national contacts, rather than on the contacts between the defendant and the State in which the federal court sits.").

**19.** *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 998–1000 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1341–44 (2d Cir.1972); *Ryan v. Allen,* 97 Civ. 0055(HB), 1997 WL 567717, *2 (S.D.N.Y. Sep 11, 1997); *GMS Group, Inc. v. Sentinel Trust Co.,* 97 Civ. 1342(WK), 1997 WL 414147, *2 (S.D.N.Y. Jul 23, 1997); *Matter of the Mediators, Inc.,* 190 B.R. 515, 522–23 (S.D.N.Y.1995), *aff'd,* 105 F.3d 822 (2d Cir.1997); *Powell v. Fisher,* 92 Civ. 1659(JSM), 1992 WL 207894 (S.D.N.Y. Jun. 10, 1992); *Kingsepp v. Wesleyan Univ.,* 763 F.Supp. 22, 24 (S.D.N.Y.1991); *Colavito v. Hockmeyer Equipment Corp.,* 605 F.Supp. 1482, 1485 (S.D.N.Y.1985).

forum state satisfy the Fourteenth Amendment in actions arising under state law.[20] This national contacts approach stems in large part from the notion that concerns about state sovereignty and federalism are absent in federal question cases, in contrast to cases in which the cause of action is based on state law.[21] As these concerns drop out, so the argument goes, the exercise of personal jurisdiction in federal question cases need not be limited by the extent of defendant's contacts with the forum state.[22] Most of these cases, moreover, have undertaken little independent inquiry into the fairness of subjecting the defendant to the jurisdiction of the forum.[23] Rather, they generally find these issues to be addressed adequately by limitations on plaintiffs' choices of venue.[24]

Courts in the second group, in contrast, view the Fifth Amendment as imposing far more substantial restrictions on the exercise of personal jurisdiction.[25] This approach has its origins in *World–Wide Volkswagen Corp. v. Woodson*, which found the personal jurisdiction inquiry under the Fourteenth Amendment to be driven by concerns not only with federalism and state sovereignty, but also with protecting the defendant's liberty interest in not being forced to litigate in a distant forum.[26] Although state sovereignty concerns are absent in federal question cases, a defendant's liberty interest exerts an independent limitation on the court's exercise of personal jurisdiction. This interest, therefore, conceivably could constrain the exercise of jurisdiction even if service otherwise were proper under a federal statute providing for nationwide service of process.

This latter approach finds support in *Insurance Corp. of Ireland v. Compagnie des Bauxites*,[27] where the Court went beyond *Volkswagen* and suggested in *dicta* that the defendant's individual liberty interest is the sole Fourteenth Amendment constraint on a court's exercise of personal jurisdiction.[28] Taken to an extreme, the language in *Bauxites* suggests that the Fifth Amendment's limitations on the exercise of personal jurisdiction are coextensive with those under the Fourteenth Amendment. Under such a view, the minimum contacts test developed in *International Shoe* would apply equally to federal and state claims, including those brought under federal statutes providing for nationwide service, where jurisdiction would be based on a defendant's contacts with the forum state, rather than with the United States as a whole, as required by the pure national contacts approach.

This interpretation of *Bauxites* would undercut severely the efficacy of nationwide service provisions. It would undermine the Walsh Act, which permits service abroad of subpoenas on nationals and resi-

---

**20.** *See Pennoyer*, 95 U.S. 714, 24 L.Ed. 565. *See International Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

**21.** 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER § 1067.1, at 321–22.

**22.** *Id.*

**23.** *Id.* Professors Wright and Miller note, however, that the national contacts doctrine has not been applied in a uniform manner. *Id.* § 1067.1, at 312.

**24.** *Id.* § 1067.1, at 321–22.

**25.** *See, e.g., Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir.1997).

**26.** 444 U.S. at 291–92, 100 S.Ct. 559.

**27.** 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Second Circuit has not spoken to this issue since the Court decided *Bauxites* in 1982. *See supra* note 19.

**28.** *Id.* at 702, 102 S.Ct. 2099 (the Due Process Clause "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty"). *Bauxites* stated further that the Due Process Clause of the Fourteenth Amendment logically cannot encompass federalism concerns because, "if the federalism concept operated as an independent restriction on the sovereign power of the court, it would not be possible to waive the personal jurisdiction requirement...." *Id.*

dents of the United States,[29] despite the fact that the Supreme Court previously has upheld its constitutionality against a due process challenge on the ground "that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned."[30] It would have dramatic implications for criminal cases as well, as the Federal Rules of Criminal Procedure provide for nationwide service of subpoenas in criminal matters.[31] Construction of *Bauxites* to preclude, on due process grounds, the exercise of personal jurisdiction absent minimum contacts with the forum state often would leave criminal defendants and the government unable to procure the live testimony of reluctant witnesses notwithstanding the strong public interest in both fairness to those accused of crimes and in enforcement of our criminal laws.

 This Court is unwilling to read *Bauxites* so broadly. The Supreme Court's *dicta* in that case never have been applied by the Court in the manner in which PMG here seeks to apply it. It stands in serious tension with a long line of precedent, including *World–Wide Volkswagen*, in which the Fourteenth Amendment limitations on the exercise of personal jurisdiction were grounded in significant measure in constraints on state sovereignty, not merely on considerations of fairness to defendants sued in inconvenient *fora*. In consequence, this Court holds that *International Shoe* and its progeny, which rest on the Fourteenth Amendment, may not simply be transplanted to limit the exercise of personal jurisdiction in federal question cases.

This is not to say that the liberty interests of persons sought to be subjected to personal jurisdiction by federal law in federal question cases are not appropriate considerations nor that *International Shoe* and other Fourteenth Amendment cases are utterly irrelevant. The Fifth Amendment stands as a bulwark against the arbitrary exercise of governmental power,[32] and the Fourteenth Amendment cases demonstrate that the determination of what is arbitrary requires consideration of the individual's interest in fundamental fairness, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining effective and convenient relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the interest of the forum in furthering substantive social policies.[33] But the interest of the federal government is not cabined by the need for the exercise of personal jurisdiction by state courts to respect the sovereignty and legitimate interests of other states. Moreover, the obligation of a citizen served with federal process to the issuing authority, the United States of America, is qualitatively different than that of a person served with process issued under the authority of a state of which that person is not a citizen or resident.[34] Hence, the balance between

---

**29.** 28 U.S.C. § 1783.

**30.** *Blackmer v. United States*, 284 U.S. 421, 438, 52 S.Ct. 252, 76 L.Ed. 375 (1932).

**31.** Fed. R.Crim. P. 17(e).

**32.** *See, e.g., Chapman v. United States*, 500 U.S. 453, 464, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (court imposed penalty based on arbitrary distinction violates Due Process Clause of Fifth Amendment); *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Fifth Amendment designed to protect the individual "from the arbitrary exercise of the powers of government") (internal citations omitted).

**33.** *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559. *See also Asahi Metal Indus.*, 480 U.S. at 113, 107 S.Ct. 1026; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**34.** *See Blackmer*, 284 U.S. at 436–37, 438 n. 5, 52 S.Ct. 252 (distinguishing from *Pennoyer* and other state law cases on the ground that, in these cases, "obligations inherent in allegiance are not involved"); *see also United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (duty to testify before a grand jury is a basic obligation owed by every United States citizen to the federal government); *Garland v. Torre*, 259 F.2d 545,

individual and governmental concerns necessarily differs in this context.

Nationwide service provisions in federal statutes reflect Congress' determination that the carrying out of the policies those statutes implement is served by facilitating enforcement without regard to state boundaries.[35] Those determinations are entitled to some deference. Moreover, it cannot be gainsaid that nationwide service provisions often are central to major federal regulatory efforts in areas at the core of Congress' power under the Commerce Clause, including antitrust and securities regulation.[36] In cases brought under these and comparable statutes, the personal jurisdiction analysis must give appropriate consideration to the strong federal concerns involved.

█ This framework casts the personal jurisdiction inquiry in this case into clearer relief. PMG, a California corporation that allegedly invests in real estate and related businesses,[37] is a United States entity. It enjoys the benefits of a vast and dynamic national market fostered by the national authority over interstate commerce that replaced the balkanization that prevailed under the Articles of the Confederation.[38] The federal interest in adjudicating the dispute is clear and substantial—Hallwood's claims against PMG are brought under the federal securities laws,[39] an area of strong federal concern that falls at the center of Congress' commerce power.[40] PMG does not allege any extraordinary burden from having to defend this lawsuit in New York; it adverts only to a modest inconvenience of litigating here rather than in California.[41] This burden does not appear excessive, particularly in an age of electronic mail, facsimile transmission, videoconferencing and frequent coast to coast air service. Indeed, the burden of having PMG, a California defendant, in the case at the pretrial stage probably will fall at least as heavily on plaintiff as on PMG, as plaintiff will be forced to conduct depositions of PMG in California.[42] In any case, PMG is a business enterprise, not an individual of limited means who could not readily cope with being forced to defend a lawsuit far from home. In the last analysis, the question is whether the burden on PMG of litigating this case in New York is so severe that the exercise of personal jurisdiction over it is arbitrary, shocks the conscience, or offends fundamental principles of ordered liberty, notwithstanding the strong federal interest in efficient and ef-

548–49 (2d Cir.) (same), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). *Cf. Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ("As in case of the authority of the United States over its absent citizens, the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties.").

**35.** 4 WRIGHT & MILLER § 1067.1, at 331. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (in assessing whether federal administrative procedures comport with due process, the government's interest in the challenged procedures is entitled to weight).

**36.** 4 WRIGHT & MILLER § 1067.1, at 331–32. *See* 15 U.S.C. § 22 (antitrust); 15 U.S.C. § 78aa (securities). Similarly, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608, which also provides for nationwide service, addresses an area of unique federal concern. *Id.* at 332.

**37.** Reiland Aff. ¶ 2; Cpt. ¶ 5.

**38.** *See, e.g.*, THE FEDERALIST Nos. 22 (Alexander Hamilton), 42 (James Madison).

**39.** Cpt. ¶¶ 55–63.

**40.** *See, e.g.*, *Sloan v. SEC*, 535 F.2d 676, 678 (2d Cir.) (plaintiff's claim that the Exchange Act is unconstitutional is "frivolous," as securities regulation is clearly within Congress' power), *cert. denied*, 429 U.S. 885, 97 S.Ct. 235, 50 L.Ed.2d 165 (1976).

**41.** Reiland Aff. ¶ 15.

**42.** *See Mill–Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y.1989) ("The caselaw ... establish[es] a general presumption that a defendant's deposition will be held in the district of his residence.") (citations omitted).

fective enforcement of the securities laws.[43] PMG has not even approached such a showing.

This is not to say that personal jurisdiction will lie in every case in which a comparable federal interest is advanced. There doubtless will be defendants who show sufficient hardship from being subjected to the jurisdiction of a geographically remote court to overcome even a strong federal interest. This, however, is not such a case. In consequence, PMG's due process objection to the exercise of personal jurisdiction is rejected.

*Motion to Sever and Transfer*

PMG moves in the alternative, pursuant to Rule 12(b)(3), to sever the claims against it and transfer them to the Central District of California on the grounds that venue is improperly laid in this district, for the convenience of parties and witnesses and in the interest of justice, or for *forum non conveniens.*

*Venue*

■ Section 27 of the Exchange Act[44] provides in relevant part that an action to enforce any liability or duty under the Act may be brought in "the district wherein any act or transaction constituting the violation occurred" or "the district wherein the defendant is found or is an inhabitant or transacts business...." In a multidefendant action where a common scheme is alleged, venue is proper as to all defendants in any district in which any defendant performed an act or transaction in furtherance of the scheme, even in absence of contact with that district by one or more other defendants.[45]

As discussed above, Gotham consists of two New York based limited partnerships. PMG, EFO and others are alleged to have worked secretly as a group with Gotham to purchase Hallwood Units on the American Stock Exchange in New York in violation of the Exchange Act.[46] This clearly satisfies the requirements of Section 27. In consequence, venue is proper in this district as to all defendants.

*Convenience of the Parties and Witnesses*

Rule 21 of the Federal Rules of Civil Procedure authorizes the severance of any claim against a party in order that it be transferred pursuant to Section 1404(a) of the Judicial Code.[47] Section 1404(a), in turn, permits the Court to transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the

---

**43.** *See United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("[T]he Due Process Clause .... prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty'") (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).

**44.** 15 U.S.C. § 78aa.

**45.** *See Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 620 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Pan Int'l Gaming, Inc. v. Tropical Int'l Sports, Inc.*, 99 Civ. 9182(SHS), 2000 WL 60191, *1 (S.D.N.Y. Jan. 25, 2000) (in securities fraud case, "where venue is proper for one defendant, venue is proper for all."); *First Fed. Sav. & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 634 F.Supp. 1341, 1350 (S.D.N.Y. 1986) ("[I]n a multi-defendant securities case in which a common scheme of acts or transactions to violate the securities law is alleged, the occurrence in the district of any act or transaction by any defendant in furtherance of the scheme is sufficient to establish venue as to any other defendant who knowingly participated in the scheme–even if such defendant did not perform any independent venue-establishing act or transaction in the district.").

**46.** Cpt. ¶¶ 2–4, 30, 34, 37, 57.

**47.** Fed. R. Civ. P. 21; *Wyndham Assoc.*, 398 F.2d at 618 ("Where certain claims are properly severed [pursuant to Rule 21], the result is that there are then two or more separate actions, and the district court may, pursuant to Section 1404(a), transfer certain of such separate actions while retaining jurisdiction of others.") (internal quotes omitted).

interest of justice." [48]

■ Severance under Rule 21 generally is appropriate if venue is improper as to one or more defendant or a party has been joined improperly under Rule 20.[49] However, in a multi-defendant case, the Court may sever and transfer a claim against one or more defendants where "the administration of justice would be materially advanced" thereby.[50] This analysis requires the Court to consider:

> "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." [51]

■ Plaintiff in this action alleges that defendants worked together in a group to purchase Hallwood Units for the purpose of taking control of and dismantling it.[52] The issues involving PMG therefore are quite closely related to those concerning the other defendants, as they involve an alleged scheme common to all defendants. It is evident also that the proof against PMG is likely to overlap significantly with the proof against the other defendants. PMG has not shown that it would suffer any measurable degree of prejudice if the case against it were allowed to remain in this district.[53] Conversely, plaintiff would be prejudiced substantially if the case against PMG were severed, as it would be forced to litigate the existence of the scheme in two separate fora. In consequence of these considerations, severance of the claims against PMG is unwarranted.

As severance is inappropriate, the Court need not consider whether transfer of the claims against PMG to the Southern District of California is warranted under Section 1404(a). Suffice it to say, in light of the foregoing, that it is highly unlikely that the interest of justice would be served by a transfer.

*Forum Non Conveniens*

Since the enactment of Section 1404(a), "it is only when the more convenient forum is in a foreign country–or, perhaps, under rare circumstances, in a state court or a territorial court–that a suit brought in a proper federal venue can be dismissed on the grounds of forum non conveniens." [54] Here, PMG makes no such claim. Dismissal for *forum non conveniens* is not warranted.

**48.** 28 U.S.C. § 1404(a); *Gold v. Burton Corp.,* 949 F.Supp. 208, 209 (S.D.N.Y.1996).

**49.** 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE § 1689, at 476–77.

**50.** *Wyndham,* 398 F.2d at 618.

**51.** *German By German v. Fed. Home Mortgage Corp.,* 896 F.Supp. 1385, 1400 (S.D.N.Y. 1995). *See also Gold,* 949 F.Supp. at 210.

**52.** Cpt. ¶¶ 2–4, 30, 34, 37, 57.

**53.** PMG contends also that it will be unable to secure the testimony of key witnesses if the claims against it are not transferred to the Southern District of California. PMG Mem. at 26. If those witnesses are unavailable to testify at trial, the Federal Rules of Evidence permit it to offer deposition testimony instead. FED. R. CIV. P. 32.

**54.** *Schechter v. Tauck Tours, Inc.,* 17 F.Supp.2d 255, 258 (S.D.N.Y.1998) (quoting 15 WRIGHT, MILLER & COOPER § 3828, at 297– 80). *See also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("[The] transfer of venue function of the forum non conveniens doctrine has been superseded by statute, and to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine, we have done so only in cases where the alternative forum is abroad.") (internal quotes omitted); *Capital Currency Exchange v. Nat'l Westminster Bank PLC,* 155 F.3d 603, 607 (2d Cir.1998), *cert. denied,* 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999) ("Section 1404(a) ... supplanted the common law doctrine of *forum non conveniens* for transfers between United States district courts.").

*Conclusion*

PMG's motion to dismiss or, in the alternative, to sever the claims against it and transfer them to the Southern District of California is denied.

SO ORDERED.