**HIGH RIVER LIMITED PARTNERSHIP,**
Plaintiff

v.

**MYLAN LABORATORIES, INC.; Robert Coury; Perry Corp.; Richard C. Perry; and DOES 1–100, Defendants.**

Civil No. 1:CV–04–2677.

United States District Court,
M.D. Pennsylvania.

Jan. 27, 2005.

---

Brian P. Downey, Pepper Hamilton LLP, Harrisburg, PA, Courtney R. Rockett, David Boies, Boies, Schiller & Flexner LLP, Armonk, NY, Frank C. Moore, III, Philippe Zuard Selendy, Boies, Schiller & Flexner, LLP, New York City, for Plaintiff.

Bridget E. Montgomery, Adam M. Shienvold, Eckert Seamans Cherin & Mellott, LLC, Harrisburg, PA, Donald B. Kaufman, Kandice J. Giurintano, McNees, Wallace & Nurick, LLC, Harrisburg, PA, Gregory A. Markel, Jason M. Halper, Cadwalader Wichersham & Taft LLP, New York City, for Defendants.

## *MEMORANDUM*

RAMBO, District Judge.

Before the court is Defendants Richard C. Perry and Perry Corp.'s (the "Perry Defendants") Motion to Transfer Venue (Doc. 8). The Perry Defendants request the court to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York or, in the alternative, to the Western District of Pennsylvania. As explained more fully below, the court finds that this action could have been brought in the Southern District of New York and that the balance of factors strongly favors transferring the case to that forum. Thus, the Perry Defendants' motion will be granted.

## I. *Background*

On July 23, 2004, Defendant Mylan Laboratories, Inc. ("Mylan") entered into an Agreement and Plan of Merger (the "Merger Agreement") with King Pharmaceuticals, Inc. ("King") whereby Mylan agreed to acquire King and then merge its wholly-owned subsidiary, Summit Merger Corporation, into King (the "Merger"). (Compl. ¶¶ 18–19.) In its Complaint, Plaintiff High River Limited Partnership, the owner of over 26.2 million shares of common stock in Mylan, alleges that Defendants' conduct in relation to the Merger violated federal securities laws and Pennsylvania state law. (*Id.* ¶¶ 1, 12.) Specifically, Plaintiff asserts that Defendants, among other things, failed to disclose information that was material to the value of Mylan stock and engaged in a vote-buying scheme to disenfranchise Mylan shareholders. (*Id.* ¶ 1.) Plaintiff alleges that Defendants' fraudulent conduct will cause Mylan to acquire King at an inflated price. (*Id.*)

Plaintiff brought suit under §§ 10(b) and 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78m(d), and Rules 10b–5 and 13d–1 thereunder, 17 C.F.R. §§ 240.10b–5 and 240.13d–1. (*Id.* ¶ 8.) Plaintiff also sued under Pennsylvania statutory and common law. (*Id.* ¶ 9.) For relief, Plaintiff seeks a declaratory judgment and equitable relief, including judicial supervision over Mylan's corporate actions with respect to the proposed shareholder vote on the Merger.

In its Complaint, Plaintiff alleges that venue was proper in the Middle District of Pennsylvania pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa; the general federal venue statute, 28 U.S.C. § 1391; and Pennsylvania statutory provisions 15 Pa. Cons.Stat. §§ 102 and 1103. (*Id.* ¶ 10.) In further support of its claim of proper venue, Plaintiff asserts that "[a] substantial part of the events or omissions giving rise to the claims occurred in this district" and that Mylan is a Pennsylvania corporation with its registered office located in Dauphin County, within the Middle District of Pennsylvania. (*Id.*)

Plaintiff is organized under the laws of Delaware and has its principal place of business in Mount Kisco, New York, located within the Southern District of New York. (*Id.* ¶ 12.) Defendant Mylan has business offices in Canonsburg, Pennsylvania, located within the Western District of Pennsylvania. (*Id.* ¶ 13.) Defendant Robert J. Coury is an executive at Mylan and resides within the Western District of Pennsylvania. (*Id.* ¶ 16.) Defendant Perry Corp. is a corporation in New York, New York, which is located in the Southern District of New York. (*Id.* ¶ 14.) Defendant Richard C. Perry is the President and sole stockholder of Perry Corp. and is a citizen of the state of New York. (*Id.* ¶ 15.)

The Perry Defendants filed their Motion to Transfer Venue on December 20, 2004 requesting that this action be transferred to either the Southern District of New York or the Western District of Pennsylvania. In support of their motion, the Perry Defendants filed the affidavit of Lance Rosen, a partner of Perry Corp. Mr. Rosen asserts the following based on his personal knowledge of the allegations in the Complaint. The Perry Defendants' allegedly unlawful conduct took place at Perry Corp.'s offices located within the Southern District of New York, namely the preparation of certain Securities and Exchange Commission ("SEC") filings and the execution of various securities transactions. (Mot. to Transfer Venue, Rosen Aff. ¶ 3.) Many of the potential witnesses at trial would be employees of Perry Corp. and High River Limited Partnership, all of whom reside or are believed to reside within the Southern District of New York. (*Id.* ¶ 4.) Many potential third-party witnesses, including employees of financial institutions that participated in the securities transactions at issue, reside in or near the Southern District of New York. (*Id.* ¶ 5.) Finally, the documents that are relevant to this action are in the possession of either Mylan or Perry Corp. located in the Western District of Pennsylvania and the Southern District of New York respectively. (*Id.* ¶ 7.)

Following the filing of the Perry Defendants' Motion to Transfer Venue, Defendants Mylan and Robert Coury (the "Mylan Defendants") filed a submission outlining their position on the motion. Plaintiff has responded to the issues raised by Defendants. The matter is now ripe for disposition.[1]

## II. *Legal Standard: Change of Venue*

The applicable statute for change of venue is 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute provides district courts with discretion to transfer a civil action "if the transfer is warranted by the convenience of parties and witnesses and promotes the interests of justice." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Stated differently, "the purpose of [§ 1404(a)] is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.* (internal quotations omitted). Although the court has discretion to transfer venue, "a motion to transfer is not to be liberally granted." *Measurement Specialties, Inc.*

---

1. Also pending in this case is Plaintiff's Motion for Speedy Hearing and Expedited Discovery (Doc. 3), but the court stayed further briefing on that motion until it disposed of the instant motion (Doc. 10). Additionally, the Perry Defendants and the Mylan Defendants have recently each filed a motion to dismiss. (*See* Docs. 56, 58.)

*v. Stayhealthy.com,* 275 F.Supp.2d 638, 640 (E.D.Pa.2003).

As a threshold question, the court must determine whether the action "might have been brought" in the proposed transferee district. *Id.* at 616–17, 84 S.Ct. 805. If this limitation is met, the court must then weigh a list of factors. While there is no definitive list of factors, courts generally consider the following: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (4) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (5) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (6) the enforceability of the judgment; (7) practical considerations that could make the trial easy, expeditious, or inexpensive; (8) the relative court congestion in the competing courts; (9) the local interest in deciding local controversies at home; (10) the public policies of the fora; (11) and the familiarity of the trial judge with the applicable state law. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995). The burden of showing that these factors warrant transfer rests with the moving party. *Id.* at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re United States,* 273 F.3d 380, 388 (3d Cir.2001) (quoting *In re Balsimo,* 68 F.3d 185, 187 (7th Cir.1995)) (alterations in original).

### III. *Discussion*

The Perry Defendants contend that the instant action should be transferred to the Southern District of New York or the Western District of Pennsylvania for the following reasons. First, this action could have been brought in either of these fora. Second, the balance of the above factors favors transfer to either district. Specifically, the convenience of the parties and witnesses, the location of relevant documents, and the location of the events giving rise to the action all support transferring the action to either of the proposed transferee districts. The Mylan Defendants join the Perry Defendants arguments as to why transfer to the Southern District of New York is warranted; however, the Mylan Defendants also note that if the court concludes that the Southern District of New York is not the most appropriate forum, they do not object to litigating the action in the Middle District of Pennsylvania.

For the reasons set forth below, the court concludes that the most appropriate forum for this action is the Southern District of New York. Conducting the litigation in that forum will be significantly more convenient for the parties and witnesses. Further, the Middle District of Pennsylvania only has a minor connection to the events giving rise to the litigation; therefore, the interests of justice compel the court to transfer the case. Because the court finds that transfer to the Southern District of New York is warranted, the court will not address the Perry Defendants' arguments regarding transfer to the Western District of Pennsylvania. Nevertheless, the court notes that upon consideration of all the relevant facts, the balance of factors favors transfer to the Southern District of New York even over the Western District of Pennsylvania.

### A. This action "might have been brought" in the Southern District of New York.

■ If a plaintiff would have had a right to bring suit in the proposed transferee

district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski,* 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Thus, in order to prevail on a motion to transfer venue under § 1404(a), the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district. *Id.* at 343–44, 80 S.Ct. 1084; *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970). Plaintiff does not dispute that subject matter jurisdiction would exist in the Southern District of New York; therefore, the court will only address whether venue and personal jurisdiction would be proper in that forum.

**1. Venue would be proper in the Southern District of New York.**

■ In general, venue must be established for each separate cause of action. 17 James Wm. Moore et al., Moore's Federal Practice ¶ 110.05 (3d ed.2004). Plaintiff's federal claims are brought under §§ 10(b) and 13(d) of the Exchange Act. Section 27 of the Exchange Act provides that venue is proper for cases involving alleged violations of its provisions "in the district wherein any act or transaction constituting the violation occurred" or in a District "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa. The Perry Defendants argue that under this standard, venue is proper in the Southern District of New York because many of the acts or transactions that form the basis of Plaintiff's Complaint occurred there and because the Perry Defendants are found and transact business there. The court agrees. Because the requirements of § 27 of the Exchange Act would be met in the Southern District of New York, venue over Plain-

tiff's federal claims is proper in that district.

Plaintiff does not dispute this conclusion. Instead, Plaintiff asserts that the Perry Defendants failed to establish proper venue over Plaintiff's state law claims in the Southern District of New York. The Perry Defendants counter that venue over Plaintiff's state law claims would be appropriate in the transferee forum under the doctrine of pendent venue.

■ Pendent venue is an exception to the rule that venue must be established for each cause of action asserted in the complaint. *Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States & Canada,* 812 F.Supp. 509, 517 n. 3 (E.D.Pa.1992). Under this doctrine, venue exists "where claims arise out of the same operative facts" even if venue over the pendent claim would not otherwise be proper. *Id.* The doctrine of pendent venue borrows largely from the principles of supplemental jurisdiction. *Beattie v. United States,* 756 F.2d 91, 101 (D.C.Cir.1984), *overruled on other grounds by Smith v. United States,* 507 U.S. 197, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993); 17 James Wm. Moore et al., Moore's Federal Practice ¶ 110.05 (3d ed.2004). Thus, a court examining whether to apply pendent venue should consider whether the claims derive from a common nucleus of operative fact and whether allowing for pendent venue would further the goals of judicial economy, convenience, and fairness to the litigants. *Beattie,* 756 F.2d at 102–03; *see also MCI Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3d Cir.1995) (setting forth the requirements for supplemental jurisdiction).

■ In applying the standards for pendent venue to the instant matter, the court concludes that pendent venue over Plaintiff's state law claims would be proper in

the Southern District of New York. Both Plaintiff's state law claims and federal claims are based on the same allegedly fraudulent conduct. *See Miller v. Asensio,* 101 F.Supp.2d 395, 409 (D.S.C.2000) (finding that pendent venue was proper because "state-law claims of fraud and negligence unquestionably arise from the same nucleus of operative fact" as securities fraud claims brought under § 10(b) of the Exchange Act). Further, Plaintiff alleges that subject matter jurisdiction exists over his state law claims through the supplemental jurisdiction statute, 28 U.S.C. § 1367. Assuming a court in the Southern District of New York would exercise supplemental jurisdiction over Plaintiff's state law claims, pendent venue over those claims would also be proper. *See Beattie,* 756 F.2d at 101 ("The doctrine of 'pendent venue' is now well-established, particularly in cases where the court has previously exercised its discretion to hear a certain claim under pendent jurisdiction."); *see also Travis v. Anthes Imperial Ltd.,* 473 F.2d 515, 528–29 (8th Cir.1973) (noting that a decision to allow for supplemental jurisdiction "also decides the question of venue" because "[t]here is pendent venue ... for essentially the same reasons as there is pendent subject matter jurisdiction"). In short, the court finds that the Southern District of New York could properly assert pendent venue over Plaintiff's state law claims. *See Hsin Ten Enterprise USA, Inc. v. Clark Enterprises,* 138 F.Supp.2d 449, 462 (S.D.N.Y.2000) ("Courts within this circuit routinely exercise pendent venue over state law claims ....").

Plaintiff argues that relying on pendent venue in the Southern District of New York could produce an unfair result. Plaintiff contends that if Defendants successfully brought a motion to dismiss Plaintiff's federal law claims, a court in the Southern District of New York could de-cline to exercise supplemental jurisdiction and pendent venue. Plaintiff would then be forced to re-file its claims in Pennsylvania state court. The court will not engage in such hypotheticals. That a court in the Southern District of New York *might* grant a motion to dismiss and *might* exercise its discretion to decline supplemental jurisdiction and pendent venue does not diminish the fact that Plaintiff could have brought its claims in that district in the first instance. Regardless, even if Plaintiff's federal law claims would be dismissed, courts have limited discretion to decline to exercise supplemental jurisdiction. *See* 17 James Wm. Moore et al., Moore's Federal Practice ¶ 110.05 (3d ed. 2004) ("Courts have less discretion to decline to exercise supplemental jurisdiction than they did before the enactment of [28 U.S.C. § 1367], and therefore have little reason to decline to permit pendent venue."). Thus, Plaintiff's argument fails to convince the court that venue would not be proper if this action were transferred to the Southern District of New York.

### 2. Personal Jurisdiction would be proper in the Southern District of New York.

█ In order to transfer a case to another district, the transferee court must have personal jurisdiction over all of the defendants. *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 31 (3d Cir.1993); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970) (finding transfer under § 1404(a) inappropriate because, among other reasons, there was "a very real question" whether personal jurisdiction was proper over one of the defendants in the transferee forum). Plaintiff asserts that this action should not be transferred to the Southern District of New York because that district would lack personal jurisdiction over the Mylan De-

fendants, who are located in Pennsylvania. Following a review of the Perry Defendants' response to Plaintiff's argument, the court finds that the Southern District of New York could exercise personal jurisdiction over the Mylan Defendants as explained below. The court will analyze personal jurisdiction with respect to each of the Mylan Defendants.

### a. Mylan

In determining whether a court may exercise personal jurisdiction over a defendant, the court must examine whether the defendant has constitutionally sufficient "minimum contacts" with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and whether subjecting the defendant to the court's jurisdiction comports with "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Plaintiff's claims under the Exchange Act only extend to Mylan and do not include Mr. Coury. Section 27 of the Exchange Act authorizes nationwide service of process. *See* 15 U.S.C. § 78aa. When a federal statute provides for national service of process, the extent of a defendant's contacts is analyzed in relation to the United States as a whole, not simply the forum state. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir.2002); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F.Supp.2d 279, 285–86 (S.D.N.Y.2000). Mylan is a corporate entity in the United States that engages in interstate commerce; therefore, it has clearly established "minimum contacts" within a national forum.

The next step is to assess whether the exercise of personal jurisdiction in the Southern District of New York is consistent with "traditional notions of fair play and substantial justice."[2] *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *Pinker*, 292 F.3d at 370. The burden on Mylan in being forced to litigate this action in the Southern District of New York is not excessive. Indeed, Mylan has concurred in the motion to transfer venue to that forum. Thus, the Southern District of New York's exercise of personal jurisdiction over Mylan would not conflict with fairness principles. In sum, the exercise of personal jurisdiction over Mylan with respect to Plaintiff's federal law claims would be proper in the Southern District of New York.

The Perry Defendants contend that the Southern District of New York could also exercise personal jurisdiction over Mylan with respect to Plaintiff's state law claims under the doctrine of pendent personal jurisdiction. Pendent personal jurisdiction exists "where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative facts.'" *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir.1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Under these circumstances, a district court may assert personal jurisdiction over a defendant with respect to related state law claims even though personal jurisdiction would not otherwise exist. *Id.; see also Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 175 (2d Cir. 1979) (concluding that pendent personal

---

**2.** Courts have debated whether this second prong even applies when a federal statute provides for nationwide service of process. *Pinker*, 292 F.3d at 371 n. 2. Nevertheless, the court will address the issue here in the event that a court in the Southern District of New York would elect to consider the factor.

jurisdiction over state law claims was proper because the claims arose from the same operative facts as claims arising under the Exchange Act). As explained above, Plaintiff's state law claims involve the same nucleus of facts as its federal law claims under the Exchange Act. *See supra* Part III.A.1. Thus, pendent personal jurisdiction over the state law claims against Mylan would be proper.

Plaintiff does not contest the Perry Defendants' argument regarding pendent personal jurisdiction except to point out that the Southern District of New York's application of this doctrine would be discretionary. If the Southern District of New York were to decline to accept pendent personal jurisdiction over the state law claims against Mylan, Plaintiff argues, the result would be inequitable to Plaintiff. As stated above, the court is not persuaded by such speculation. *See supra* Part III.A.1. Whether the Southern District of New York actually declines to accept pendent personal jurisdiction over the state law claims against Mylan has no bearing on whether Plaintiff could have brought suit in that district. In short, the court concludes that personal jurisdiction over Mylan would have been proper in the Southern District of New York.

#### b. Mr. Coury

Because Mr. Coury is not named in any of the federal securities law counts in Plaintiff's Complaint, personal jurisdiction over him must be examined under New York's long-arm statute. *See* N.Y. C.P.L.R. § 302. If jurisdiction is proper under the New York long-arm statute, then constitutional due process concerns

will also be satisfied because New York's jurisdictional statute "does not reach as far as the constitution permits." *Topps Co., Inc. v. Gerrit J. Verburg Co.,* 961 F.Supp. 88, 90 (S.D.N.Y.1997).

The Perry Defendants contend that Mr. Coury is subject to personal jurisdiction under three sections of New York's long-arm statute, namely N.Y. C.P.L.R. §§ 302(a)(1), 302(a)(2), and 302(a)(3). Because the court finds that personal jurisdiction over Mr. Coury would be proper under § 302(a)(3), the court need not address the other provisions.[3]

Section 302(a)(3)(ii) provides that a court may exercise personal jurisdiction over any non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" if he or she "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The inquiry of whether a plaintiff suffered an injury in New York is governed by the "situs-of-injury" test. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001). The "situs-of-injury" is where "the critical events associated with the dispute took place." *Palace Exploration Co. v. Petroleum Dev. Co.,* 41 F.Supp.2d 427, 435 (S.D.N.Y.1998) (internal quotation omitted). For fraud claims, the "situs-of-injury" is the location where the plaintiff relies on the defendant's misrepresentations or acts. *Id.*

Applying these principles to the instant matter, the court concludes that the requirements of § 302(a)(3)(ii) are sat-

---

**3.** The court notes, however, that the Southern District of New York could most likely exercise personal jurisdiction over Mr. Coury under §§ 302(a)(1) and (a)(2) as well. Section 302(a)(1) allows New York courts to exercise personal jurisdiction over any person who

"transacts any business within the state or contracts anywhere to supply goods or services in the state." Section 302(a)(2) allows New York courts to exercise personal jurisdiction over any person who "commits a tortious act within the state."

isfied. First, Plaintiff's Complaint alleges that Mr. Coury, along with Mylan, aided and abetted the Perry Defendants in creating a fraudulent vote-buying scheme. (*See* Compl. ¶ 107.) The only place Plaintiff could have relied upon this alleged fraudulent conduct is at its business offices located in New York. Thus, the "situs" of Plaintiff's injuries was New York. Second, Mr. Coury should have reasonably expected his actions to have consequences in New York. Plaintiff alleges that Mr. Coury made explicit comments to Plaintiff's representatives in New York to facilitate the fraudulent scheme. (*See id.* ¶ 6.) Finally, Mr. Coury, through his association with Mylan, derives substantial revenue from interstate commerce. Mr. Coury has also traveled to New York as part of his job responsibilities. (*See* The Mylan Defs.' Submission, Decl. of Brian S. Roam ¶ 4 (describing a meeting between Mr. Coury and one of Plaintiff's representatives in New York).)

In sum, the court concludes that the Southern District of New York could exercise personal jurisdiction over the Mylan Defendants. Plaintiff requests the court to require the Mylan Defendants to concede the existence of personal jurisdiction over them in the Southern District of New York. Plaintiff, however, does not offer any caselaw to demonstrate that the court has the authority to take this action. Regardless, the court does not find it necessary to require the Mylan Defendants to make such a concession because the Mylan Defendants have concurred in the motion to transfer this action to the Southern District of New York.

**B. The balance of factors favors transfer to the Southern District of New York.**

 Having determined that this action "might have been brought" in the Southern District of New York, the court must now weigh a series of factors to determine if transfer to that forum under § 1404(a) is warranted. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). As stated above, these factors are: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (10) the public policies of the fora; (11) and the familiarity of the trial judge with the applicable state law. *Id.* at 879–80.

Upon consideration of the Perry Defendants' arguments regarding these factors, the court concludes that the balance of factors weighs heavily in favor of transferring this case to the Southern District of New York. First, most of the parties and potential witnesses are located in the Southern District of New York. *See Bolton v. Tesoro Petroleum Corp.*, 549 F.Supp. 1312, 1315 (E.D.Pa.1982) ("There is no question that the availability and convenience of witnesses and parties is an important consideration, perhaps the paramount consideration, in determining the desirability or necessity of a transfer."). Plaintiff and the Perry Defendants all either reside or have business offices there. (*See* Compl. ¶¶ 12, 14, 15.) The two parties that are not located in New York, the Mylan Defendants, have concurred in the motion to transfer the action there, noting that "it would be more convenient for the

parties ... to move forward with this case in the Southern District of New York." (The Mylan Defs.' Submission at 3.) Most of the potential witnesses are also located in the Southern District of New York. (*See* Mot. to Transfer Venue, Rosen Aff. ¶ 4.) Even most of the potential non-party witnesses are located in that forum. (*Id.* ¶ 5.) Plaintiff admits that many of the non-party witnesses would be outside the subpoena power of this court. (*See* Pl.'s Br. in Opp'n to Mot. to Transfer at 16.) In short, the court finds that the convenience of the parties and witnesses strongly favors transfer to the Southern District of New York. *See* 17 James Wm. Moore et al., Moore's Federal Practice ¶ 111.13[1][f][ii] (3d ed. 2004) ("[W]hen a majority of both parties' material witnesses are located in the district to which transfer is sought, transfer is likely to be granted ....").

In addition to the greater convenience to the parties and witnesses if this action is litigated in the Southern District of New York, many of the key events giving rise to Plaintiff's claims occurred in that forum. Documents filed with the SEC that are described in Plaintiff's Complaint were prepared at Perry Corp.'s offices in New York City. (Mot. to Transfer Venue, Rosen Aff. ¶ 3.) Likewise, securities transactions that are relevant to Plaintiff's claims were executed in Perry Corp.'s offices. (*Id.*) Brian S. Roman, an attorney for Mylan, also submits that the Merger Agreement between Mylan and King, the primary underlying event of this entire action, was negotiated in New York City. (The Mylan Defs.' Submission, Roman Aff. ¶ 3.) Additionally, Mr. Roman states that a meeting between Mr. Coury and one of Plaintiff's representatives, where Mr. Coury allegedly facilitated the Perry Defendants' fraudulent vote-buying scheme, occurred in New York City. (*Id.* ¶ 4.) Based on these considerations, the court finds that the location of the key events in this case

supports transferring the case to the Southern District of New York. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 882 (3d Cir.1995) (transferring an action to the forum where most of the events occurred).

Finally, the access to sources of proof would be more convenient if this litigation proceeded in the Southern District of New York. As stated previously, many of the relevant documents were prepared in Perry Corp.'s offices in New York. (Mot. to Transfer Venue, Rosen Aff. ¶ 3.) To the extent that documentary evidence is possessed by the Mylan Defendants in Pennsylvania, those defendants have pledged to cooperate in the production of documents if the action takes place in the Southern District of New York. (The Mylan Defs.' Submission, Roman Aff. ¶ 5.) Regardless, none of the parties indicate that any of the relevant documents are located in the Middle District of Pennsylvania. Thus, the court concludes that the costs associated with producing documents in discovery and at trial would be less in the Southern District of New York than in the Middle District of Pennsylvania.

Plaintiff urges the court to keep this case in the Middle District of Pennsylvania based primarily on two considerations. The first is that Plaintiff's choice of forum should be given deference, and the second is that this court can try the case more expeditiously because its docket is less congested. The court finds that both of these arguments lack merit.

█ Plaintiff's assertion that a plaintiff's choice of forum is ordinarily a "paramount consideration" is correct. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). However, the plaintiff's choice is "entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon

which the suit is based." *Reed v. Weeks Marine, Inc.,* 166 F.Supp.2d 1052, 1057 (E.D.Pa.2001). Nonetheless, Plaintiff contends that even though it is not located within the Middle District of Pennsylvania, its choice of forum should be honored "unless the balance of interests tilts strongly in favor of a transfer." *Id.* In this case, all relevant considerations point in favor of transfer out of the Middle District of Pennsylvania. None of the parties or witnesses are located here. None of the events giving rise to the litigation occurred here. None of the relevant documents are located here. (*See* Mot. to Transfer Venue, Rosen Aff. ¶ 6.) In light of these considerations, Plaintiff's choice of forum is entitled to little deference in this case.

Similarly, the court is not persuaded by Plaintiff's argument that this action should remain in the Middle District of Pennsylvania because the case can be tried more expeditiously here. The court recognizes the urgent nature of Plaintiff's claims; however, allowing an action to proceed in a forum simply because it is less congested and presumably more capable of disposing of the case quickly would invite forum shopping. Given that the Southern District of New York is clearly more convenient for the parties and witnesses in this case, the fact that court congestion is less in the Middle District of Pennsylvania is not enough alone to continue with the action in this district.

**4.** Plaintiff contends that because some of the witnesses reside in Pennsylvania and some of the events in this action occurred there, Pennsylvania has an interest "in adjudicating this local controversy." (Pl.'s Br. in Opp'n to Mot. to Transfer Venue at 11.) Plaintiff's focus on the connection of this case to the state of Pennsylvania is misplaced. The relevant inquiry is the relative merits of conducting this litigation in a particular district.

**5.** In the event that the court decided that transfer to the Southern District of New York was proper, Plaintiff requested the court to

In sum, the court concludes that after consideration of all the relevant factors, transfer of this action is warranted under § 1404(a). The Southern District of New York is a more desirable forum for this action than the Middle District of Pennsylvania. Many of the parties, the witnesses, and the relevant documents are located in the Southern District of New York. In contrast, the only connection the Middle District of Pennsylvania has to this case is that Mylan's registered office is located in this forum.[4] (Compl.¶ 10.) However, there is no indication that this office has any connection to the action. Thus, the court will grant the Perry Defendants' motion to transfer this action to the Southern District of New York.[5]

## IV. *Conclusion*

In accordance with the foregoing discussion, the court will grant the Perry Defendants' Motion to Transfer Venue to the Southern District of New York. An appropriate order will issue.

## *ORDER*

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The Perry Defendants' Motion to Transfer Venue (Doc. 8) is **GRANTED.**

transfer the case to the White Plains Division of that district. The court, however, will decline to do so, finding it more appropriate to leave that decision to the internal administration of the Southern District of New York. *See Morris v. Local 819, IBT,* No. 94 CIV. 8010, 1995 WL 293623, at *4 (S.D.N.Y. May 11, 1995) ("28 U.S.C. § 1404(b) allows a district court to transfer a case to another division 'in the same district,' but I have found no authority empowering a district judge to specify which division within another district a case should be transferred to.").

2) The Clerk of Court shall transfer the captioned matter to the Southern District of New York.[1]

3) The Clerk of Court shall close the case file in this district.

1. As stated in the accompanying memorandum of law, Plaintiff filed a Motion for Speedy Hearing and Expedited Discovery on December 17, 2004. The court stayed briefing in response to that motion until it disposed of the Perry Defendants' Motion to Transfer Venue. The court will keep the stay in place until the transferee court has had opportunity to create a briefing schedule on that motion. Additionally, the Perry Defendants and the Mylan Defendants have filed motions to dismiss. On January 21, 2004, Plaintiff filed a motion for extension of time to respond to these motions. The court granted this motion, and Plaintiff will have until February 14, 2004 to respond to Defendants' motions.